THE SWEDISH-AMERICAN TELEPHONE COMPANY *et al.*

*v.*

THE FIDELITY AND CASUALTY COMPANY OF NEW YORK.

*Opinion filed April 20, 1904.*

1. ESTOPPEL—*when party is estopped to raise constitutional question.* A corporation which contracts with a casualty company to permit the latter to inspect the corporation's books in so far as they pertain to compensation paid to its employees, is estopped to complain that an order of court enforcing such contract is in violation of the constitutional guaranty against searches and seizures.

2. CONSTITUTIONAL LAW—*when an order to produce books is not in violation of constitution.* An order of court to produce books, which limits the examination to such matters as are pertinent to the issue, does not infringe the constitutional guaranty against unreasonable searches and seizures.

3. CONTEMPT—*party may be punished for contempt though order is erroneous.* · A party may be punished for contempt for refusing to obey an order of a circuit court, however improvidently or erroneously made, if the court had jurisdiction of the parties and the subject matter and had power to make the order.

4. EVIDENCE—*right to order production of books not limited to time of trial.* Under section 9 of the Evidence act the power of the court to order the production of books and writings "upon motion and good and sufficient cause shown" is not limited to the time of trial.

5. SAME—*when order to produce books is proper.* Where the contract between plaintiff and defendant authorizes the plaintiff to inspect certain books of the defendant at all reasonable times, the court has power, in case of defendant's refusal, to order the production of such books before the trial, if needed to enable the plaintiff to prepare his case.

6. SAME—*when bill of discovery or subpœna duces tecum is unnecessary.* Under section 9 of the Evidence act, if the affidavits in support of a motion to produce books show good cause, the court may order the production of such books without requiring a bill of discovery or issuing a *subpœna duces tecum.*

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an appeal from an order, entered by the circuit court of Cook county on January 9, 1904, in a certain suit in assumpsit, brought by the appellee against

the appellant, the Swedish-American Telephone Company, imposing a fine upon said telephone company of $25.00, and imposing a fine upon the appellant, Fayette S. Munro, of $1050.00 for contempt of court in refusing to comply with an order for the production of the ledger and journal of the telephone company, and all sheets and memoranda, which were a part thereof, showing the entries or memoranda contained therein, "which pertain to money expended as compensation to employes of the said defendant for services rendered during the time covered by the policy of insurance, issued by the plaintiff to said defendant, to-wit, from the 7th day of June, A. D. 1901, to the 7th day of June, A. D. 1902, inclusive, within ten days from this date upon plaintiff giving to the defendant twenty-four hours' notice. Said examination to take place at the office of defendant's attorney, room 734, 159 LaSalle street, Chicago, Illinois," which said order was entered on the 27th day of November, 1903.

The suit in assumpsit was begun on January 6, 1903, by the appellee, the Fidelity and Casualty Company of New York, against the said telephone company, and the declaration, as originally filed therein, consisted of the common counts, to which a plea of the general issue was filed. Subsequently, an additional count was filed, setting forth a certain contract between said telephone company and said casualty company, which was in the nature of an indemnity, by which the casualty company agreed to indemnify the telephone company against all loss, which might be suffered by the latter company by reason of personal injury suits, or claims, arising out of accidents to the employes of the telephone company. The consideration, stated in the contract of insurance or indemnity, was two-fold: First, the sum of $84.00 as a premium; and second, a promise by the telephone company to pay an additional premium to be computed upon a percentage of its pay-roll, to-wit, a sum of money equal to 42/100 of one per cent of the total amount, that

the telephone company should expend during the period, covered by the insurance contract, for labor and services of its employes employed on its premises in Chicago. The amended or additional count averred that the pay-roll at the end of the year June 7, 1902, exceeded the sum of $20,000.00, etc.

A copy of the original contract, called a "liability policy," is set out in the additional count, and the clause, upon which the additional premium is based, is as follows: "The premium is based on the compensation to employes to be expended by the assured during the period of this policy. If the compensation actually paid exceeds the sum, stated in the schedule hereinafter given, the assured shall pay the additional premium earned; if less than the sum stated, the company will return to the assured the unearned premium *pro rata;* but the company shall first retain not less than $25.00, it being understood and agreed that this sum shall be the minimum earned premium under this policy." The policy contained a further clause, the first sentence of which is as follows: "The company shall have the right and opportunity at all reasonable times to examine the books of the assured, so far as they relate to the compensation paid to his (its) employes, and the assured shall, whenever requested, furnish the company with a written statement of the amount of such compensation during any part of the policy period, under oath if required."

On December 16, 1903, after it was made to appear to the court that all parties and persons had been duly notified, that a rule would be asked for upon the telephone company, and upon its president, and secretary, and attorney, to appear before the court, and show cause why they and each of them should not be attached and punished for contempt in refusing and neglecting to obey the order, entered on November 27, 1903, and after it had been made to appear to the court by affidavits, heard

and filed, that the telephone company, its president, secretary and attorney, had each refused and neglected to obey said order of November 27, 1903, it was thereupon on December 16, 1903, ordered by the court that the telephone company, its president, secretary and attorney, should each appear before the court, within three days from that date, to show cause why they and each of them should not be attached, and be punished for contempt. In the order, entered on January 9, 1904, imposing the fines as above stated, it was recited that the telephone company, and Fayette S. Munro, its attorney, were guilty of contempt in that each of them willfully refused and neglected to comply with the order of the court, entered on November 27, 1903, and failed to show cause why they should not be attached and punished for contempt of court, as ordered by the court to do, and which order they and each of them were duly notified of, and which order they and each of them had ample opportunity to comply with.

The telephone company filed no affidavits, denying the allegations contained in the affidavits, filed by the casualty company. But the counsel of the telephone company objected to the entry of the order on November 27, 1903, for the alleged reasons, that said order was not authorized by any statute of Illinois nor by the common law, but was contrary to the common law and the statutes, and to public policy, and to the constitutions of the United States and of the State of Illinois. These objections were overruled by the court, to which action of the court the telephone company took exception. It was agreed that the objections to the order, together with the ruling thereon and exceptions, should be considered as having the same effect as if filed, made and taken in writing in the form of a motion to vacate the order.

The affidavits, filed by the appellee, after stating the terms and conditions of the policy, as above set forth,

stated that the telephone company had not fully paid to the casualty company the premium agreed to be paid, as consideration for said insurance, and had not allowed the casualty company, its agents, or representatives, or any of them, to examine its books of account, in so far as they related to compensation, paid to the telephone company's employes during the period of the insurance contract, but, on the contrary, had denied the casualty company the right to make such examination, and refused to permit it, or its agents, or any of them, to make such examination although repeatedly requested to do so; that at reasonable times the agent and auditor of the casualty company presented himself at the regular place of business of the telephone company, where its books of account were kept, and requested to be permitted to make an inspection of said books, in so far as the same related to compensation paid to its employes during the period covered by the insurance contract, and such requests were refused and denied; that, upon request, such agent had examined a portion of the books of the telephone company, but had been refused permission to examine the ledger, journal or cash book, and that he had reason to believe that said books would show a larger pay-roll than the pay-roll presented to him by the books, which he had examined; that from his examination there was due on the policy the sum of $54.72, and he had no other methods of obtaining the information concerning the books of the telephone company. The affidavit of the attorney for the casualty company stated, in addition to the above allegations, that, unless permission was granted to see the books, the casualty company would be unable to properly prepare its case for hearing, and that the evidence, contained in said books, was pertinent to the issue, and necessary to the proof of the plaintiff's case; that said books and memoranda of accounts were wholly in the custody and control of the telephone company, and liable to be lost and destroyed; and that affi-

ant knew of no other source, from which the evidence, contained in the books and memoranda aforesaid, could be obtained.

FAYETTE S. MUNRO, for appellants.

O. W. DYNES, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The order, punishing the appellants herein for contempt of court, was made under and in pursuance of section 9 of chapter 51 of the Revised Statutes in regard to evidence, etc. ' Section 9 is as follows: "The several courts shall have power in any action pending before them upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power, which contain evidence pertinent to the issue." (2 Starr & Curt. Stat. —2d ed.—1842).

*First*—The first contention, made by the appellants, is that section 9 above quoted is unconstitutional, as being in contravention of the constitutions of the United States and of the State of Illinois. The constitutional provisions, which are claimed to be violated, are those, which protect "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." (Fed. Const. amendment 4; Ill. Const. sec. 6, art. 2; 1 Starr & Curt. Ann. Stat.— 2d ed.—pp. 36, 108). It is also claimed that section 2 of article 2 of the Illinois constitution, which provides that "no person shall be deprived of life, liberty or property without due process of law," is violated; (1 Starr & Curt. Ann. Stat.—2d ed.—p. 100); and that there is also a violation of the similar provision, contained in section 1 of article 14 of the amendments to the Federal constitution. (1 Starr & Curt. Ann. Stat. —2d ed.—p. 38). It cannot be said that the enforcement of the order, requiring the ap-

pellant telephone company to produce its books for inspection, authorizes any unreasonable search or seizure of appellant's papers or books. This is so for two reasons: First, the books were left in the possession of the telephone company, and the permission, given to the appellee, was simply to look at certain portions of the books, while they remained in the possession and custody of the appellant company at its attorney's office in Chicago; second, the contract, which the appellant company made with the appellee prior to the entry of the order, stipulated as follows: "The company [the appellee] shall have the right and opportunity at all reasonable times to examine the books of the assured [appellant], so far as they relate to the compensation paid to the employes." The appellant company thus stipulated in writing that the appellee might do what the order of the court authorized it to do. The appellant company by this stipulation waived the right to insist upon the protection, afforded to it by the constitutional provision against unreasonable searches and seizures, even if there would have been a violation of such constitutional provision without the stipulation in question. The appellant company is, therefore, estopped from evading the obligations of its contract by insisting upon the protection thus insured to it by the constitution.

It is to be noted, that the amount of the premium to be paid to appellee by the terms of the insurance policy, so far as it exceeded a certain fixed amount, depended upon a percentage of the total amount, which the telephone company should expend, during the period covered by the insurance contract, for the labor and services of its employes. Forty-two one-hundredths of one per cent of such amount was the premium agreed to be paid by the appellant company to the appellee. It is manifest, therefore, that the amount of the premium could not be determined without knowing what sum had been expended during the period in question for the labor and

services of its employes by the appellant company; and this sum could not be ascertained without an inspection of appellant's books. It was for this reason that the appellee was to have the right and opportunity at reasonable times to examine the books of the assured, so far as they related to the compensation paid to the employes.

In *Fidelity and Casually Co.* v. *Seagrist, Jr. Co.* 79 App. Div. Rep. (Sup. Ct. N.Y.) 614, where it appeared that the premium, payable under a policy of insurance, insuring an employer against liability for injuries suffered by his employes and others during the term of the policy, was based upon an estimate of the compensation to be paid to the employes during the period of the policy; and the policy provided that, if the compensation actually paid should exceed the amount stated in the schedule attached to the policy, the employer should pay the additional premium earned, and that, if it was less than the amount stated in such schedule, the insurance company would return to the employer the unearned premium; and where the policy further provided, as does the policy in the case at bar, that the insurance company should have the right at all reasonable times to examine the books of the employer, so far as they related to the wages paid to the employes; it was held that the court had power, upon a petition of the insurance company, alleging that the employer had falsely misrepresented to it the amount of wages paid to its employes, to compel the employer to produce his books for inspection, showing the payments made to his employes, in order to enable the insurance company to frame its complaint in an action to be brought by it to recover additional premiums. It was also held in that case, that, although the order there entered was too broad in permitting the plaintiff to inspect books not necessary to determine the question involved, yet that the order should be so modified, as to require the defendant to produce and deposit with the clerk of the court the books of original entry, which

showed the payment to its employes during the period, covered by the policies of insurance, and which were in use during that period. The precise question here involved seems to have been decided, in the New York case above referred to, under a policy similar to the one here sued upon, and under a statutory provision similar in its terms to section 9, as above quoted.

Counsel for appellants seems to entertain the idea, that the case of *Lester* v. *People*, 150 Ill. 408, is an authority for the contention here made that said section 9 is unconstitutional.

We do not so understand the *Lester case.* In that case, it was held that an order for the production of a party's books on the trial, to be used as evidence in a proper case and upon a proper showing, was not an unreasonable seizure of such books, but that an order of court, by which they were taken from his custody, and committed to that of a third person for an indefinite period of time, and for an inspection generally into all his affairs by the opposite party and his counsel, with leave to take copies of the entries therein, was unwarranted by the law, and was a palpable violation of the constitutional right of a party to be secure against unreasonable seizure of his papers and effects. But no such order was entered in the case at bar, as the order, which was condemned in the *Lester case.* The order here is for the production of the books of the appellant company to be used as evidence in a proper case and upon a proper showing. The order granted permission to the appellee, its agent or attorney, to examine the ledger and journal of the telephone company, and all sheets and memoranda, which were a part thereof, showing the entries or memoranda contained therein, which pertained to money expended as compensation to employes of the said defendant for services rendered during the time covered by the policy of insurance. The examination was by the terms of the order limited to such entries or memoranda, as pertained

to money expended as compensation to employes. It did not authorize an examination of the appellant company's books, so far as those books related to other transactions than merely the amount of compensation paid to the employes. The order cannot, therefore, be regarded as amounting to an unreasonable seizure of the books. On the contrary, the nature of the order brings the present case within the terms of the decision, made by this court in *Pynchon* v. *Day*, 118 Ill. 9, where the action was assumpsit, and where section 9 of chapter 51 was quoted and commented upon. In *Pynchon* v. *Day*, *supra*, the action was for the recovery of moneys, placed in the defendant's hands by plaintiff as margins in the purchase and sale of stocks by the defendant, as agent of plaintiff, and the plaintiff made a motion, supported by affidavit, for an order compelling the defendant to submit his books of account during the time of the dealing between the parties, to the plaintiff's inspection, and it was there said in relation to section 9 (p. 14): "There was here full liberty given for the examination and inspection of all accounts pertaining to transactions between plaintiff and the defendants, the refusal only being to allow the examination and inspection of the accounts, which appellees kept with their other customers;" and it was there also held that, although "the court will not compel a party to submit for inspection his books of accounts with other persons not parties to the suit, when it is not made to appear that they contain evidence pertinent to the issues, yet that the statute authorizes the court, upon cause shown, and proper notice, to require either party to a suit to produce books or writings in his possession or power, which contain evidence pertinent to the issue." In the case at bar, the order was such an order as was approved of in *Pynchon* v. *Day*, *supra*. Where books are to be produced, the defendant will have leave to seal up and conceal all such parts of them as, according to his affidavit previously made and filed, do not relate to the

matters in issue. (3 Greenleaf on Evidence, sec. 301; *Pynchon* v. *Day, supra*). If the order, requiring the production of the books, limits the examination to such matters as are pertinent to the issue, there will be no infringement upon the constitutional privilege of protection against unreasonable search and seizure.

In *Rigdon* v. *Conley*, 31 Ill. App. 630, it was said by one of the Appellate Courts of this State, speaking of section 9: "The power, given by this section, is in furtherance of justice, and is to be exercised in aid of parties litigant whenever proper application is made to the court and it is shown that the books or writings contain evidence pertinent to the issue between the parties." In the case at bar, the affidavits, whose substance is set forth in the statement preceding this opinion, made a clear case for the production of such books, as were necessary in order to show the amount of money, expended as compensation to its employes by the appellant company during the time covered by the policy of insurance.

While it is true that a party cannot be guilty of contempt of court for disobeying an order, which the court had no authority to make, yet if the court has jurisdiction of the parties and the subject matter, and legal authority to make the order, the party cannot refuse to obey it, however improvidently or erroneously made. (*Leopold* v. *People*, 140 Ill. 552). In the case at bar, there can be no question as to the power and jurisdiction of the court to entertain the action in assumpsit, in which the order in question was here entered. Prosecutions for contempt may be instituted for the purpose of punishing a person for misconduct in the presence of the court, or with respect to its authority or dignity, and in such case they are criminal in their nature, but when such a prosecution is instituted in order to afford relief between parties to a cause in chancery; it is civil, and is sometimes called remedial. (*People* v. *Diedrich*, 141 Ill. 665). The proceeding here is purely a civil remedy, intended to enforce

the private right of one of the parties litigant, and is intended to compel the doing of an act necessary to the administration of justice in enforcing such private right. In the class of cases, where the purpose is to advance the civil remedy of the other party to the suit and where the penalty inflicted is intended to be coercive, the party in contempt can only be relieved by compliance with the order. (*Lester* v. *People, supra*). In this State, the circuit court has the right and power in a suit at law to punish for contempt persons, who refuse to comply with its proper orders. (*Clark* v. *People*, Breese, 340; *Stuart* v. *People*, 3 Scam. 395; *People* v. *Wilson*, 64 Ill. 195; *Clark* v. *Burke*, 163 id. 334; *Dahnke* v. *People*, 168 id. 102).

For the reasons above stated, we are of the opinion that the order on the appellant company to produce its books in this case was not a violation of either the Federal or State constitution.

*Second*—The contention of the appellant company is that section 9 of chapter 51, as above quoted, does not confer upon the circuit court power to compel the production of documents prior to the trial of the case, but should be construed to apply only to the production of documents at the trial of the case. It is also contended by the appellant company, that the proper method for a party litigant to obtain evidence, pertinent to the issue and in the control of his adversary, is by a bill of discovery, or a *subpœna duces tecum*.

The language of section 9 does not limit the time, when books or writings are to be produced, to the trial of the cause. On the contrary, the several courts are given power to require the production of such books or writings "upon motion and good and sufficient cause shown;" whether before the trial for the purpose of preparing for the same, or at the trial to be used as evidence. The contract of the parties here provides that the appellee shall have the right and opportunity to examine the books of the assured "at all reasonable times."

We see no reason why an examination of the books at a time before the trial, in order to prepare for trial, is not as much an examination at a reasonable time, as an examination of the books upon the trial itself. At common law, in an action *ex contractu,* where the instrument sued upon was in the possession of the defendant, and where the plaintiff was either an actual party or a party in interest, and was refused inspection of the instrument upon request, the court was authorized to grant a rule on the defendant to produce the documents, or give the plaintiff a copy, when the production was necessary to enable him to declare against the defendant. (1 Greenleaf on Evidence,—15th ed.—sec. 559). In the case at bar, from the very nature of the contract between the parties, the only method, by which the amount due to the plaintiff below could be ascertained, was by an examination of the defendant's books, and the parties, in view of this situation, have expressly agreed that the plaintiff should be entitled to such examination. Without that examination the appellee would not be able to set up in its declaration the amount of premium due to it, because such amount is dependent upon the amount paid as compensation to the employes of the telephone company. There may be expressions in the case of *Lester* v. *People, supra,* which limit the production of the books of the opposite party to the trial of the cause, but a careful examination of the language in that case will show that it was not intended to make such limitation, provided a proper showing was made that the books contained entries tending to prove the issues.

Nor do we think that it was necessary to file a bill of discovery, in order to secure an examination of the books. In *Lester* v. *People, supra,* it was said in reference to section 9 above quoted, as follows (p. 418): "The evident purpose and design of this statute was to furnish to a party litigant a speedy and summary mode by which, under the order of the court, to obtain written

evidence pertinent to the issue, which might be in the possession and control of his adversary, and thus obviate the necessity of a bill of discovery, seeking the same end." In 3 Chitty's Practice, 432, 434, it is said: "Anciently, if a plaintiff had neglected to secure in his possession a part of a deed or agreement wanted in order to frame his declaration, he was obliged to file a bill in a court of equity for a discovery; * * * but now, to save the expense and delay of that proceeding, * * * a judge at chambers will make an order, or the court a rule, for the defendant to produce the document, and give a copy to the plaintiff, at his expense, in order that he may declare thereon." In Greenleaf on Evidence, (vol. 1, sec. 477), it is said: "The motion for a rule to inspect and take copies of books and writings, when an action is pending, may be made at any stage of the cause, and is founded on an affidavit, stating the circumstances, under which the inspection is claimed, and that an application therefor has been made to the proper quarter, and refused." If such motion may be made at any stage of the cause, it can as well be made before as at the trial. In Greenleaf on Evidence, (vol. 1, sec. 559), it is said: "The production of private writings, in which another person has an interest, may be had either by a bill of discovery, in proper cases, or in trials at law by a writ of *subpœna duces tecum*, directed to the person who has them in his possession. The courts of common law may also make an order for the inspection of writings in the possession of one party to a suit in favor of the other."

"The object of a court of equity in compelling discovery being to enable itself or some other court to decide on matters in dispute between the parties, the right of discovery is limited by the purpose, with reference to which alone it is conferred, and will not for that reason extend beyond the exigencies of the question or questions about to be tried." (Kerr on the Law of Discovery, pp. 14, 15, 17). If a bill of discovery were filed, instead of

the entry of such an order as is here under considera-
tion, the right of such discovery would be limited to the
exigencies of the question about to be tried.   Here, the
order is limited to the exigencies of the question about to
be tried, that is, to the entries or memoranda, contained
in the books, which pertain to the money expended as
compensation to the employes of the appellant.   As the
same limitation to such entries in the books, as are per-
tinent to the issue involved, exists at chancery as in or-
ders entered under section 9, there can be no necessity
of the delay, required by a bill of discovery in equity.
Section 9 was intended in actions at law to obviate the
necessity for a bill of discovery.   The order, provided
for in that section, may be made "in any action pending
before them," (the courts).   The words, "in any action,
pending before them," exclude the idea that the evidence
sought to be obtained can only be acquired by a bill of
discovery.   "Any action" includes a suit at law, as well
as a bill in chancery.   The legal and equitable remedies
may be concurrent, but the latter does not exclude the
former.   Where the affidavits filed state facts entitling
one of the parties to an inspection of the books, it is no
answer that such party could get the books by subpœna.
(*Rigdon* v. *Conley, supra*).

No complaint is made, on the part of the appellants,
of the amounts imposed by the court below as fines upon
the appellant company and its attorney, nor is any ques-
tion made as to the right of appeal directly to this court.
As this is a civil proceeding such right of appeal is rec-
ognized in the following cases:   *Lester* v. *People, supra;
People* v. *Diedrich, supra; Leopold* v. *People, supra.*

In any view, which we are able to take, we are unable
to reach any other conclusion than that there was no
error in the action of the circuit court in entering the
order, here sought to be reviewed.

Accordingly, the judgment of the circuit court of Cook
county is affirmed.                     *Judgment affirmed.*