## James Steven, Appellee, v. Fidelity & Casualty Company of New York, Appellant.

### Gen. No. 17,895.

1. INSURANCE—*employer's liability.* Where an employer's liability policy based on a schedule of the estimated compensation of employes provides that it does not cover loss from liability for injury or death caused by any person unless his compensation is included in the schedule, and also expressly states that the schedule "covers the wages or salaries of all persons to whom compensation is paid in the business or trade carried on by the assured at the location mentioned and described in the schedule," it is not ambiguous, and defendants cannot escape liability on the ground that a pay roll report made eight months after the accident shows that the compensation of the superintendent was not included in such report, though his negligence is alleged to have caused the accident.

2. INSURANCE—*where premium depends on compensation of all employes.* The fact that the compensation paid a certain employe is omitted from the schedule upon which the premium is estimated, and a premium on that compensation is never paid, does not relieve the insurance company from liability though the negligence of such employe causes the accident, where it appears from the terms of the policy that the insured agrees to pay an additional premium in case the total compensation earned by all employes proves to be more than the amount stated in the schedule.

3. INSURANCE—*where defense is waived by defending action on which liability is based.* Where defendant casualty company, knowing all the facts regarding the accident to plaintiff's employe, takes charge of the defense for plaintiff, it waives any defense it may have to an action by plaintiff on the policy.

Appeal from the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed March 6, 1913.

H. L. HOWARD, for appellant.

MILLER, GORHAM & WALES, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

On a trial before the court without a jury, appellee recovered a judgment against appellant for $4,475.67 upon an employers' liability insurance policy, which amount appellee had been required to pay in order to satisfy a judgment rendred against him in the Supreme Court of the District of Columbia for damages for negligently causing the death of one of his employes in Washington, D. C. The Casualty Company had taken full charge of the defense of the suit in Washington and when defeated had prosecuted an appeal to the Court of Appeals of the District of Columbia, where the judgment of the lower court was affirmed. The defense made to the present suit in the Municipal Court was that by the terms of the insurance policy appellant is not liable to appellee on account of injuries or death caused by any person whose compensation was not included in the estimated total compensation stated in the policy, and it was claimed that the compensation of the person who caused the accident referred to in the Washington suit was not so included. This defense involved a construction of the contract sued on, in the light of the facts hereinafter stated. A number of propositions of law were presented to the trial court by both sides, some of which were marked "held" and others "refused," from which it appears that the court construed the language of the policy as including the compensation of the employe whose alleged negligence caused the accident, and held further that even if this were not true, appellant had waived any defense it might have had upon that point, by assuming control of the suit brought for the recovery of damages for the negligence of such employe. Appellant contends that both these rulings were erroneous.

The essential facts are not disputed. The policy sued on is dated August 2, 1907. It provides that in

56 APPELLATE COURTS OF ILLINOIS.

Steven v. Fidelity & Casualty Co. of N. Y., 178 Ill. App. 54.

consideration of $180 "estimated premium," and of the statements contained in the "schedule of statements" therein set forth, all of which are warranted to be true "except the statements concerning the number of employes and their compensation, which are estimated," the appellant company agrees to indemnify appellee (called "the assured") for a period of twelve months, "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death accidentally suffered * * * by any employe of the assured," while at the place and "during the prosecution of the work described in the schedule," subject to a number of conditions, which are stated in paragraphs lettered consecutively from A to O inclusive. In the "schedule of statements" the kind of work is stated to be "stone setting," by "steam and hand power;" the place, Washington, D. C.; the "estimated average number of employes, 35;" the "estimated compensation for period of policy, $10,000;" the "premium rate per $100 of compensation, $1.80;" and the "estimated amount of premium, $180.00." Among the conditions are: (A) that the company's liability for the death of one person is limited to $5,000; (B) that the policy "does not cover loss from liability for injuries or death to or caused by any person unless his compensation is included in the estimate set forth in the schedule;" (C) that immediate written notice, with full particulars, shall be given by the assured to the company, of the happening of any accident and the presentation of any claim on account thereof; (D) that if any suit is thereafter brought to enforce such a claim, the assured shall immediately forward to the company's home office every summons as soon as served, and the company will defend such suit in the name and on behalf of the assured; (E) that the assured shall not "interfere in any negotiation for settlement or in any legal proceeding," but shall aid in securing information and the

attendance of witnesses and in effecting settlements and prosecuting appeals; (J) that the premium is based upon the entire compensation earned by the employes of the assured during the period of the policy, whether paid in cash, board, merchandise or other substitute for cash, and if the entire compensation exceeds the sum named in the schedule, the assured shall pay the additional premium earned, while if it is less than that sum, the company will return the unearned premium; and (M) that the company's auditors shall have the right and opportunity, whenever desired by the company, to examine the books and records of the assured as to the compensation earned by his employes, and that upon the request of the company, the assured shall furnish a written statement of the compensation earned by his employes during any part of the policy-period, and a like statement at the end of the policy-period, covering the full period.

On January 21, 1908, while this policy was in force, an employe named Saunders, working for appellee on a building in Washington, D. C., under the direction of James Steven, Jr., appellee's son and superintendent, met with an accident which caused his death. Appellee reported the accident to appellant, who investigated the facts fully and obtained the written statements of five or six witnesses. On May 5, 1908, suit was brought against appellee and James Steven, Jr., as partners, by the administratrix of Saunders. Appellee turned over the summons to appellant, who then assumed full control of the case, through its attorneys in Washington. The declaration charged, with several other grounds of recovery, that the accident was caused by a negligent order given by "James Steven, Jr., superintending said job." In June, 1908, the suit was dismissed as to James Steven, Jr., and an amended declaration was filed, the second count of which alleged that the accident was caused by a stone falling upon Saunders which had become dislodged "under negligent orders and directions from said de-

fendant, his agent or superintendent.'' The case was tried, however, in March, 1909, upon a third count filed just before the trial, charging James Steven, Jr., with negligence in giving orders to omit ''dowels,'' while setting certain stones in a balustrade, whereby one of the stones was insecurely fastened and fell upon Saunders. The ''dowels'' referred to were small pieces of slate which were usually inserted between and into adjoining blocks of stone in order to bind and hold them in place as part of the balustrade.

Meantime, on April 23, 1908, the company requested a ''pay-roll report'' from appellee. The request was turned over to a time-keeper, who computed the amounts shown by the pay-rolls to have been paid to employes from the date of the policy to March 6, 1908, and inserted the total in the blank form used for that purpose. It was then signed ''James Steven, assured. By James Steven, Jr.,'' and sent to the company. This report stated that the entire compensation earned by all of the employes of the assured engaged in the business described in the policy for the period named, including ''all persons compensated by the assured in any manner in the said trade or business'' was as follows: ''Pay-roll, $10,364.15; Estimate, $10,000; (balance) $364.15; Additional premium, $6.55.'' On September 29, 1908, an ''assistant auditor of pay-rolls,'' employed by the company, went to the temporary office of appellee in Washington to verify this report. He was shown the time books, and from them he checked up the amounts paid to employes week by week, and reported that the total given in the April report was correct. These time books were offered in evidence. They show at the top of the pay-rolls for each week, the name ''James Steven, Jr.,'' and opposite his name is marked the number of hours he worked each day, but no amount of wages or compensation is entered opposite his name. The total of $10,364.15 appears to be the sum of the

wages paid to the employes named in the time books other than James Steven, Jr. The latter testified that the reason the amounts earned by him were not given in the time books was that he did not receive any fixed salary or compensation for his work, but received his living expenses, which averaged from $15 to $18 per week.

The theory of appellant's counsel is that "Condition B" of the policy (which provides that the policy "does not cover loss from liability for injuries or death * * * caused by any person unless his compensation is included in the estimate set forth in the schedule") exempts appellant from liability for the payment of any judgment rendered against appellee for damages caused by the negligence of James Steven, Jr. This theory assumes that the compensation of Steven, Jr., was not included in the estimate. In support of this view, it is insisted that the "pay-roll report" made by Steven, Jr. on April 23, 1908, followed by evidence of the fact that the total given in that report does not include any compensation paid to him, is conclusive proof that his compensation was not included in the "estimate set forth in the schedule." There might be some force in this argument if there was any ambiguity in the contract. In the absence of ambiguity, the question of appellant's liability cannot be determined by a report made by appellee's son eight months after the contract was entered into, but must be settled by reference to the language of the contract. The policy states in express terms that the estimated compensation given in the schedule "covers the wages or salaries of *all persons to whom compensation is paid* in the business or trade carried on by the assured at the locations mentioned and described in this schedule." There is nothing ambiguous about this language. Steven, Jr. was one of the persons to whom compensation was paid in the business carried on by the assured at the location described, and therefore by

the terms of the contract his compensation was included in the estimate. To give the report of Steven, Jr. the effect claimed would be not merely to construe the contract, but to change or modify it so as to release appellant from its obligations. There is not the slightest evidence that the report was intended to have that effect and there was no consideration for any such modification or release. It is true that it was shown that the report was incorrect, but appellant was not thereby in any manner deceived or misled to its prejudice. The report was not made until several months after the accident happened to Saunders, whereby appellant's liability had become fixed. Appellant did not rely on the report, but sent around an auditor to verify it by an examination of appellee's books. Those books disclosed to the auditor that the name of Steven, Jr., was the first name on every pay-roll, and that nearly every day the work was going on, he had worked eight hours a day with appellee's other employes. We are clearly of the opinion that the pay-roll report cannot be given the effect claimed by appellant.

It seems to be also assumed, by counsel for appellant, that the liability of appellant under the policy depends upon the question of fact whether any premium was ever paid by appellee to appellant, based upon an aggregate amount of compensation which included the compensation of Steven, Jr. The liability of appellant does not depend upon that question, but upon the question whether, by the terms of the policy, appellee *agreed to pay* a premium based upon that amount of compensation. In other words, if it appears from the language of the contract, that the parties intended that appellee should pay an additional premium in case the total compensation actually earned by all his employes, including Steven, Jr., should prove to be more than the amount stated in the schedule, then it is immaterial, so far as the liability

of appellant is concerned, whether appellant ever in fact received such additional premium or not. If appellee became liable to appellant for such additional premium, appellant thereby became liable to appellee for any loss sustained through the carelessness of Steven, Jr. There is nothing in the language of the contract making the liability of appellant dependent upon the payment in advance of any fixed sum as a premium. On the contrary, the advance payment of $180 is explicitly stated to be an "estimated premium," based upon an "estimated" aggregate compensation of $10,000, payable, when earned, to an "estimated" number of employes; and all these estimates are, in terms, excepted from the warranty as to statements contained in the "schedule of statements." Furthermore, by "Condition J" of the policy it is expressly stipulated that if the entire compensation earned by all employes of the assured "exceeds the sum set forth in the schedule" (*i. e.,* the estimated total of $10,000) "the assured shall immediately pay the company the additional premium earned," and if it is less, "the company will return the unearned premium, *when determined.*" It is apparent, from these provisions, that appellee thereby incurred a liability to pay to appellant an additional premium at the rate of $1.80 per $100 upon the compensation earned by James Steven, Jr., if it were true, in point of fact, that his compensation had been omitted in making up the estimate of $10,000, and it is equally clear that this was the understanding of the parties at the time the contract was made. In Swedish-American Telephone Co. v. Fidelity & Casualty Co. of New York, 208 Ill. 562, the same appellant brought suit to recover such an additional premium upon a similar policy; and while its right to recover was not directly decided, it was necessarily involved in the decision, which was to the effect that the company had the right to compel the production of the books and papers of the assured in order that they might be examined for the purpose of

ascertaining how much compensation was paid to the employes of the assured. It follows that since appellant could have recovered from appellee an additional premium based upon the omitted compensation of Steven, Jr. (if it was in fact omitted), it was bound to indemnify appellee against loss caused by the negligence of Steven, Jr., whether it actually received the additional premium or not.

Moreover, appellant knew, or should have known, all the facts regarding the accident to Saunders, the connection of Steven, Jr., therewith, his position with appellee, and that it was claimed in the Saunders suit that the fault was that of Steven, Jr. Having such knowledge, or means of knowledge, appellant waived any defense it might otherwise have had to appellee's demand, by taking charge of the defense of the Saunders case. Appellant's counsel concedes that such is the law "when the casualty company knows or in the course of ordinary events should have known, that the case was not covered under the policy."

We find no prejudicial error in the action of the trial court in marking all of appellant's propositions of law "refused." The counter-propositions submitted by appellee were all marked "held." In our opinion, they show that the trial court entertained correct views of the law applicable to the facts of the case, and that is the purpose of submitting such propositions.

The judgment of the Municipal Court is affirmed.

*Judgment affirmed.*