Original proceeding in contempt; argued January 13; defendants purged April 14, 1931

STATE ex rel. SONDHEIM et al. *v.* McCLAIN et al.

(298 P. 213)

*John M. Pipes,* of Portland (Martin L. Pipes and Lotus L. Langley, both of Portland, on the brief), for plaintiffs.

*Max Wilson,* of Joseph, and *J. A. Burleigh,* of Enterprise, for defendants.

BROWN, J. This proceeding involves an alleged contempt of court, arising out of the execution of a writ of mandamus in the case of *State ex rel. Sondheim v. McClain et al.,* 132 Or. 561 (286 P. 590), to require the officials of Wallowa Valley Improvement District No. 1 to assess and levy a tax upon the irri-

gable lands in that irrigation district. On September 23, 1930, in response to a motion by plaintiff therefor, this court made an order citing the defendants to appear herein and show cause why they should not be arrested to answer for the contempt of this court in failing to obey the peremptory writ of mandamus, i. e., in failing to assess the lands in the district, as commanded in the writ. The motion is supported by an affidavit made and filed by Louis Sondheim on behalf of plaintiff, wherein the affiant says, among other things:

"This court, upon the petition of the plaintiff, issued its alternative writ of mandamus, directed to the said defendants in said mandamus proceeding, to immediately proceed to make, equalize and apportion an assessment and levy against all the lands in the Wallowa Valley Improvement District No. 1 * * *, sufficient to pay the whole amount of money necessary to be raised by said district for the year 1930 for any and all purposes whatsoever in carrying out the provisions of the irrigation district law, including estimated delinquencies on assessments, and especially to include in such assessment and levy the sum of $16,000 to retire the bonds of the district in default, and the sum of $6,000 to retire the bonds of the district that may mature during the year 1930, and the sum of $4,140 for interest that should accrue on the outstanding bonds of the said district during the year 1930, or a total sum of $26,140."

The affidavit avers that, notwithstanding the total lands in the irrigation district amount to 8,906.9 acres, the defendants assessed only 6,757.8 acres thereof, and refused to assess the remaining 2,149.1 acres; that thereafter plaintiff's counsel made demand upon the defendants that they comply with the peremptory writ of mandamus, and that the defendants wilfully refused "to assess all of the lands of said district in accordance

with the said peremptory writ of mandamus, and do now wilfully fail and refuse to levy any assessment against the said 2,149.1 acres of land.''

Based upon this motion and affidavit, the court made the order as stated above.

The defendants, by answer, admit the commands of the writ of mandamus. They admit that certain lands situate within Wallowa Valley Improvement District No. 1 were omitted from the assessment and levy, and deny that plaintiff demanded that they levy upon all the lands in the district as required by the writ. They aver that there are within the boundaries of the irrigation district approximately 8,961.7 acres of land, of which 2,415.3 acres are classified as pasture land not susceptible of irrigation, and approximately 6,546.4 acres that may be classified as tillable, irrigable lands; that, prior to the time the peremptory writ of mandamus was served upon the defendants, and prior to the time the directors met to assess the lands as ordered by the writ, the district had, by foreclosure of certificates of delinquency issued against certain of these lands, acquired title to 880 acres thereof, and, at the time of the assessment involved herein, was the owner of the legal title to these lands. They further allege that, included within the boundaries of the district are more than a thousand acres of land, which land is not irrigated by the district; that these lands possess adjudicated water rights dating years prior to the organization of the district, and that they have never been assessed by it. They allege ''that said provision requiring the said directors to levy upon each and every acre within said district and including the lands then owned by said district and the lands within said district which enjoyed a full and complete water right independent of said district, and which rights had never been

acquired by said district, was not in accordance with the law, and said defendants had been advised and believed that said lands could not legally be assessed by the said district." They then allege that, on May 2, 1930, the defendants' secretary went to Pendleton to talk the situation over with eminent jurists and secure their advice and opinion, "in order that the * * * directors might proceed with the levy and assessment promptly and in a legal manner, and comply so far as possible with the said writ of mandamus," and that the directors, desiring to comply with the writ at once so as to avoid all possible delay and uncertainty in the assessment of the taxes, immediately thereafter met for the purpose of making the assessment as ordered. They aver that the assessment made was sufficient to raise the sum of $33,140 for all purposes of the district, and particularly the sums of $16,000, $6,000 and $4,140, with which to pay the matured bonds, bonds maturing in 1930, and interest, as ordered by the writ. They aver that, in the matter of making the assessment, they acted in good faith. They disclaim all intention of acting in disobedience to the order of this court, and pray that they be relieved from the consequences of their acts of omission as hereinbefore set out.

It is asserted by the directors of the district, in effect, that the assessable lands of the district have been assessed. We cannot concur in this contention. It clearly appears from the record that, in exempting certain lands of the district from taxation for operation and maintenance, they have not proceeded in accordance with the following section of our irrigation district law:

"Until such time as the water rights appurtenant to any tract of land within an irrigation district shall be acquired by the district, the assessments against

such land, except for operation, maintenance and drainage, shall be in the same proportion to a full assessment as the additional water right to be supplied to such tract bears to a full water right, and for operation, maintenance and drainage, each irrigable acre in the district shall be assessed the same as every other irrigable acre, except as hereinafter provided'': Gen. L. of Or., 1917, chap. 357, § 24.

Neither is there anything in the record that exempts from assessment the 800 acres referred to in the answer.

■■■ The defendants seek to justify their course by reason of the requirement in the order that all the lands within the district be assessed, some of which, as we have seen, they claim are not assessable. It has been held that

"When a court has jurisdiction of the parties and the subject-matter, and the power to make the order, it will punish for a contempt even where the order is too broad in its terms: *Swedish-American Tel. Co. v. Casualty Co.*, 208 Ill. 562 (70 N. E. 768); *Nelson v. London Guar. & Accident Co.*, 132 Ill. App. 10.'' 5 Standard Proc., p. 370, note.

However, in determining the issues herein, we shall adhere to what we believe to be the better doctrine— to punish wilful disobedience only.

Now, referring to the necessity for formal proceedings in a trial for contempt of court, we note the following expression by the Iowa court in *Jones v. Mould*, 151 Iowa 599, 132 N. W. 45:

"The power to proceed summarily, without formal indictment and without the intervention of a jury, to hear charges of contempt of court, and to assess punishment upon those found guilty, has been an attribute of all courts of record in every stage of the development of our system of procedure.''

Section 8-501, Oregon Code 1930, thus defines contempts of the court:

"The following acts or omissions, in respect to a court of justice, or proceedings therein, are deemed to be contempts of the authority of the court:

&ast; &ast; &ast; &ast; &ast;

"(5) Disobedience of any lawful judgment, decree, order or process of the court &ast; &ast; &ast;."

In 5 Standard Encyclopedia of Procedure, there appears the following general definition:

" 'Contempt' is the willful disregard of the authority of a court of justice or legislative body, or disobedience to its lawful orders."

A direct contempt of court is the committing of some improper act in the presence of the court while in session. In the instant case the alleged omission constituting the contempt was not committed in the presence of the court or judge, and is therefore denominated constructive or indirect contempt: 5 Standard Proc., pp. 367, 368.

In the exposition of the laws enacted for the creation and the administration of irrigation districts, we should keep in view that the ultimate object of such districts is to put water upon irrigable lands, or upon lands that can be made irrigable. This district is struggling with a crushing load of local taxation. It was organized when agricultural lands and the products thereof were near peak prices. Since that time a vast change has taken place in the value of farm products and farm lands. According to an estimate made by the United States Department of Agriculture, the value of farm property devoted to agricultural products in the United States has suffered a shrinkage in the last ten years of twenty-five billions of dollars, a sum almost as great as the national debt of the United States at

the end of the World War. See "The Farmer's Tax Burden," by Basil Manly and C. M. Kelley; published by The Rawleigh Foundation, Washington, D. C.

From a perusal of the record in this case, we are satisfied that these defendants did not calmly proceed in open defiance of law and justice. On the contrary, they are law-abiding citizens, and it was their intention to act in obedience to the law of the land. By reason of this fact, they are hereby purged of all contempt, conditioned, however, upon the faithful performance by them, within thirty days from the date of the filing of this opinion, of the requirements of the writ.