Argued at Pendleton September 7; affirmed November 9, 1933

DOWN *v.* MILLER ET AL.
(SONDHEIM ET AL., INTERVENERS)

(26 P. (2d) 781)

*John M. Pipes,* of Portland, and *Max Wilson,* of Joseph, for appellants.

*J. A. Burleigh,* of Enterprise, for respondent.

ROSSMAN, J. The irrigation district and the bond issue involved in this suit are the same as in *State ex rel. v. McClain,* 132 Or. 561 (286 P. 590); *State ex rel. v. McClain,* 136 Or. 53 (298 P. 211), and *State ex rel. v. McClain,* 136 Or. 60 (298 P. 213). By reference to the last of the three above-cited decisions, it will be observed that a part of the lands comprising the district receive no water from the plant owned by the district. Appurtenant to those lands are adjudicated water rights which are exercised and which supply those lands with an adequate quantity of water. Charles Down, an incompetent, who instituted this suit through the guardian of his estate, is the owner of 40 acres of such land. Prior to the trial, the parties stipulated that in 1877 Down's predecessors in interest acquired title through the homestead laws of the United States of America; that at the same time they, together

with other settlers upon the public domain, went upon unappropriated lands of the United States and appropriated the waters of a stream which is a branch of Little Sheep creek (later known as McCully creek) "and appropriated all of the water of said stream amounting to approximately — inches; and by means of a dam placed in said stream diverted the waters therefrom and by means of ditches, flumes and dry water courses carried and conveyed said waters in a northerly direction from the point of diversion to and upon the lands of plaintiff's predecessors in interest and to the lands of the other appropriators of said water and applied the same to said lands for domestic, stock and irrigation purposes; that since said time and from year to year said waters have been applied to said tract of land by plaintiff and his predecessors in interest for said purpose * * *''. Continuing, the stipulation of facts recites that in 1890, when W. H. Winter was the owner of that land, "the right of the said W. H. Winter to the use of said water for irrigation of crops upon said lands was contested and a suit was brought in the circuit court of the state of Oregon for Wallowa county wherein one Daniel Simmons was the plaintiff and the said W. H. Winter was defendant, the said W. H. Winter being one of the predecessors in interest of plaintiff in said lands; and by the decree of said circuit court the said W. H. Winter was adjudicated a right to the waters of said creek conveyed through said Sheep Creek ditch sufficient for the complete irrigation of said tract of land and other lands; and also for domestic and stock use; that by said decree of said court in said cause said tract of land was adjudicated a full and complete water right for domestic, stock and irrigation of crops thereon; and that ever since said date, and from year

to year, plaintiff and his predecessors in interest have so used the waters from said stream for said purposes; and that said waters have been ample and sufficient to fully and completely irrigate said land and for stock and domestic purposes''. The stipulation of facts further states that in the year 1929 the state engineer of Oregon ''adjudicated to said tract described in plaintiff's complaint with a priority of 1877 sufficient water from said source for the irrigation of the entire tract of forty acres''. The parties also stipulated that the defendant corporation never supplied the plaintiff's land with water, and never purchased the water rights appurtenant to it.

When the petition for the organization of the irrigation district was prepared in 1919 the land owned by the plaintiff was not included in the district because of his aforementioned water right, but shortly thereafter a petition was presented to the county court of Wallowa county, bearing the signature of Charles Down and four other owners of land in the contemplated district, with water rights similar to his, in which they prayed that their lands be included in the irrigation district. Their petition, after describing their lands, stated: ''That all of said land is susceptible of irrigation from the works of the Mountain Sheep Irrigation District; that said land has an old water right from Sheep Creek ditch, a tributary of Little Sheep creek, but is located in the heart of said irrigation district and should be included in said district subject to the said water right now appurtenant to said land.'' The name, Mountain Sheep Irrigation District, was the title then selected for defendant corporation. The county court granted the petition by an order which recited: ''Said land has an old water right

from Sheep Creek ditch, a tributary of Little Sheep creek, but is located in the heart of said irrigation district, should be included in said district, subject to the water right from said Sheep Creek ditch, now appurtenant to said lands." One of the five signers of the petition just mentioned testified that before he signed the petition the organizer of the corporation represented to him "that it would be difficult for them to sell these bonds, unless all of the lands were included in the district; and he also stated this, that we would not be assessed on the additional lands; that no assessment would be made; and that was further corroborated by Mr. Knapper and, so far as I know, that agreement was kept; they kept that until things failed". Another of the signers testified that before the supplemental petition was signed the organizer stated: "Well, he put that before the bunch there, that it was necessary for us to sign up in order to float the first bond issue at that time; while he said that would be excluded though from any taxation, that is, the land that had this water right." Still another testified that his objections to signing were overcome by a representation made by the organizer wherein he declared: "The bonds would be more salable; that the bonding houses had objected and they would have to put it in but it would be excluded from taxation; we never would have to run any tax on it." No one disputed the testimony of these witnesses.

Again reverting to the three cases above mentioned, it will be observed that in the first of them, by an appropriate writ, we ordered the directors of the irrigation district, after they had signified an intention of not doing so, to levy a tax for the payment of the accumulated interest and matured bonds. In the second decision, we refused to sustain a motion of the

directors whereby they sought to exclude from taxation 880 acres of land which the district had acquired through the foreclosure of certificates of delinquency. In the third case the directors were charged with a violation of the mandate of the writ issued in the first case by levying a tax upon only 6,757.8 acres of the total of 8,961.7 acres which comprise the district. Answering this charge, the directors alleged (1) that 2,415.3 acres of land in the district is pasture land, not susceptible of irrigation; (2) that the ownership of 880 acres of the tillable, irrigable land had been acquired by the district through the foreclosure of certificates of delinquency; and (3) that a thousand acres in the district possessed adjudicated water rights dating prior to the organization of the district. Disposing of the third allegation, our decision stated:

"It clearly appears from the record that, in excepting certain lands of the district from taxation for operation and maintenance, they have not proceeded in accordance with the following section of our irrigation district laws: 'Until such time as the water rights appurtenant to any tract of land within an irrigation district shall be acquired by the district, the assessments against such land, except for operation, maintenance and drainage, shall be in the same proportion to a full assessment as the additional water right to be supplied to such tract bears to a full water right, and for operation, maintenance and drainage, each irrigable acre in the district shall be assessed the same as every other irrigable acre, except as hereinafter provided.' "

In levying taxes for the year 1931 the board of directors of the district, in an endeavor to comply with the above-mentioned writ, as interpreted in the third decision, assessed against the plaintiff's lands a tax which included $557.09, the amount which the board determined the plaintiff should contribute toward the

payment of the district's matured bonded indebtedness and the bonds which would become due within the ensuing twelve months' period of time, together with interest, and also $13.71 for defraying the cost of operation and maintenance of the district's plant. The plaintiff protested against the item of $557.09, but paid the item of $13.71, together with the taxes levied against his land for state and county purposes. When his protests failed to effect a cancellation of the $557.09 item, he instituted this suit.

██ By reverting to the excerpt of 1917 Session Laws, chapter 357, section 24, which is now a part of section 48-801, Oregon Code 1930, and which is set forth in the above quotation taken from our third decision, it will be observed that water rights appurtenant to a tract of land located within an irrigation district, and which have not been acquired by the district, entitle the land to a reduction in the tax assessed by the district, except charges exacted for the maintenance of the plant and drainage. In that decision we cited this section of our laws as a complete answer to the statement of the board that the district contained lands with appurtenant water rights. The other two decisions held that all irrigable lands included in the district must be taxed, but did not hold that every acre must be assessed for the retirement of the bonded indebtedness and the payment of interest thereon. We have carefully read all portions of our extensive irrigation statutes which seem to affect the problem before us, but have found nothing which qualifies the above-quoted portion of section 48-801. Since the plaintiff's land has an appurtenant water right which supplies it with its water needs, and since his land receives no service whatever from the district's irrigation plant, it follows that his land is not subject to a tax for the

retirement of the district's bonded indebtedness and the payment of interest thereon, unless he is estopped, as the defendants contend, from the maintenance of this suit.

■ We have given careful consideration to the contention of the defendants and interveners that the petition, signed by the plaintiff, whereby he induced the county court to include his land in the district, should estop him from the maintenance of this suit. Clearly, his petition prevents him from contesting the validity of the portion of the statute which imposes upon his land a tax for the maintenance and operation charges of the district (Cooley's Constitutional Limitations, (8th Ed.) pp. 368 and 598, and 12 C. J., Constitutional Law, p. 769, § 190), but we do not believe that his action should subject him to the payment of the district's bonded indebtedness. It will be recalled that his petition stated: "Said land has an old water right from Sheep Creek ditch * * * and should be included in said district subject to the said water right now appurtenant to said land." The county court's order which granted the petition stated that the land was included in the district, "subject to the water right from Sheep Creek ditch, now appurtenant to said lands". Since the plaintiff's petition expressly mentioned the water right appurtenant to his land, and sought qualified inclusion only, thereby notifying those dealing with the district of his water right, we do not believe that he should be estopped from asserting any rights which he saved by mentioning his water right and seeking a qualified order of inclusion only.

It follows from the above that the decree of the circuit court will be affirmed.

RAND, C. J., BELT and KELLY, JJ., concur.