# Fidelity and Casualty Company of New York v. Stewart Dry Goods Company.

(Decided March 3, 1925.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Insurance—Where Liability of Insurer and Insured Under Accident Policy Incompatible Each May Protect its Own Interest.— Where policy indemnified employer against liability for accident to employe except minor hired contrary to law, and an injured minor employe sought recovery on two grounds, one covered by policy and other not, insurer and insured could each protect its own interest, and neither had right to demand that other surrender defense of case.

2. Insurance—Insurer Held Not to have Waived Right to Claim Exemption from Liability by Defending Suit where Insured Given Full Notice.—Where insurer was not liable if injured employe was a minor hired contrary to statute, and injured minor employe sought to recover on two grounds, one covered by policy and other not, action of insurer in defending case, after full notice to insured and opportunity to it to protect its rights was not a waiver of right to claim exemption from liability on ground that minor was employed contrary to statute.

3. Insurance—Series—Where Insurer Liable on One Ground of Recovery and Insured Liable on Other Neither can Exclude Other from Participating in Defense.—Where there are two grounds of liability asserted by injured employe, for one of which insurer is liable and for other insured is liable, neither party has right, without fault of other, to exclude other from participating in defense.

4. Insurance—Insured could Not Fail to Make Settlement with Injured Employe and then Hold Insurer Liable for Additional Amount Recovered by Employe.—Where employer's liability policy exempted insurer, where employe was hired contrary to statute, insured could not fail to make proposed settlement with an injured employe which insurer rejected and which called for payment of full amount of policy by insurer, and then hold insurer liable for additional amount recovered by employe since if employe was hired contrary to statute insurer would not be liable.

5. Insurance—Where Ground on which Verdict Based Not Shown, no Inquiry can be Made in Subsequent Action.—Where record does not show on what ground verdict of jury was based in action against employer there can be no inquiry into such question in employer's action against liability insurer.

6. Insurance—Burden on Insurer to Show Injured Minor Employe Hired Contrary to Statute Within Exemption from Liability.— Where employer's liability policy excepted injury to minor hired

contrary to statute, and a minor employe recovered damages which insured paid, but judgment did not determine whether minor was employed contrary to statute, in action by insured against insurer, burden is on insurer to prove that minor was employed contrary to statute.

FRED FORCHT and MERIT O'NEAL for appellant.

R. C. KINKAID, H. H. NETTELROTH and HOWARD B. LEE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

The Stewart Dry Goods Company is a corporation engaged in the general merchandise business in Louisville, Kentucky. The Fidelity and Casualty Company of New York is an insurance company which, among other things, issued elevator liability policies, insuring persons against loss as a result of accidents to their employes. In 1912 it issued, in consideration of the sum of $18.00, an elevator liability policy to the dry goods company by which it agreed to indemnify it against loss or damages, not exceeding $5,000.00, on account of bodily injury or death occurring while the policy was in force to any person or persons while in the car of its elevator, and further agreed "to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not." The policy contained this provision:

"This policy does not cover loss from liability for or any suit based on injuries or death suffered or caused by any child employed by the assured contrary to law or any minor while performing any work contrary to law."

In November, 1912, John K. Miller, while employed by the dry good company as a messenger boy, sustained serious injuries on the elevator and brought this suit against the dry goods company to recover therefor. In his petition he charged that he was employed in a place that was dangerous and unsafe and was compelled in his occupation to use an elevator which was in a dangerous and defective condition and also that the elevator was negligently operated. The insurance company was notified of the suit and by its attorneys answered in the name of the dry goods company. About a year after the issues were made up and before the trial of the case the plaintiff

filed an amended petition in which he alleged that at the time he was injured he was under sixteen years of age and was employed by the Stewart Dry Goods Company in an occupation dangerous to life or limb, contrary to the child labor statute of Kentucky, in force at the time of his injury. When this amendment was filed the attorneys for the insurance company promptly notified the attorney for the dry goods company, by letter of January 8, 1914, of the allegations of the amendment, stating that the insurance policy did not cover accident where the injured person was employed contrary to law and that if it developed upon the trial of the case that Miller was employed contrary to law, the insurance company would not pay any judgment that might be rendered. In answer to this letter, on February 26, 1914, the counsel for the dry goods company said that in view of the fact that the insurance company would not be liable under its policy if the plaintiff was employed contrary to law, it was apparent that the Stewart Dry Goods Company was entitled to have the question as to the legality of the employment presented to the court, and therefore the dry goods company called upon the insurance company to state whether or not it would assume charge of the defense of the suit and indemnify the defendant against any recovery which might be had therein up to the amount fixed in the policy, and if the company would not do this the dry goods company would be prepared to defend the action and then seek to hold the insurance company liable under the policy to the full extent. The letter concludes with these words:

"Inasmuch as the plaintiff was employed as a messenger boy in defendant's dry goods store, we contend that such employment was not one which could be regarded as dangerous or injurious to health or morals, or to life or limb, and we are confident that we can so establish upon the trial of this case. Under your construction of the policy in question, it may not be to your interest to make an effort to show that such employment was legal, but the defendant would be vitally affected by failure to maintain this position.

"Our client, therefore, calls upon your company to say whether or not it will defend this suit and indemnify the defendant in the amount fixed in its policy, and we notify you that our client is not will-

ing to give over the defense of this case to your
company with any agreement that the verdict shall
determine the question as to your company's lia-
bility.''

The provisions of the policy referred to in this letter
are these:

''The company reserves the right to settle any
claim or suit. Whenever requested by the company,
the assured shall aid in securing information, evi-
dence, and the attendance of witnesses, in effecting
settlements, and in prosecuting appeals. The as-
sured shall at all times tender to the company all
cooperation and assistance within its power. . . .

''E: The assured shall not voluntarily assume
any liability; nor interfere in any negotiations or
legal proceedings conducted by the company on ac-
count of any claim; nor, except at his own cost, settle
any claim, nor incur any other expense without
the written consent of the company previously given;
except that he may provide at the time of the acci-
dent, and at the cost of the company, such immedi-
ate surgical relief as is imperative.''

In answer to this letter the attorney for the insur-
ance company, on March 2nd, wrote this:

''In response to this statement, I wish to say,
first, that the Fidelity & Casualty Company has a
right under the terms of the policy to manage the
defense of this case, and if you mean to notify the
Fidelity & Casualty Company that the Stewart Dry
Goods Company withdraws such right, then, in no
event, would the Fidelity & Casualty Company be
liable or responsible to the Stewart Dry Goods Com-
pany for any verdict in the case. Second, the Fidelity
& Casualty Company will in no event assume any
liability whatever other than is stated in the policy,
and in order that you may have no misunderstand-
ing or misconception of its position, I will now state
that the Fidelity & Casualty Company will not as-
sume any responsibility for any judgment obtained
by reason of any illegal employment of the plaintiff.
These positions the Fidelity & Casualty Company
is clearly entitled to under the policy contract, and
it does not intend in any way whatever to vary or
enlarge the terms of the policy contract; and I do

now hereby notify the Stewart Dry Goods Company in behalf of the Fidelity & Casualty Company, that if the Stewart Dry Goods Company takes the defense of this action out of the hands of the Fidelity & Casualty Company's attorney, the latter company will decline all responsibility of any kind in the case.''

On March 3rd the attorneys for the dry goods company wrote this in reply, after quoting its letter of February 26th:

"The Stewart Dry Goods Company does not mean to withdraw from the Fidelity & Casualty Company any right which it may have under its policy to defend the above action but neither will the Stewart Dry Goods Company accord to your company any right which is not given to it, or reserved by it, in said policy.

"Your statement that you are prepared to present to the court and jury all evidence which may be had and produced by the Stewart Dry Goods Company in an effort to convince the court and jury that there has been no illegal employment, is not satisfactory to the Stewart Dry Goods Company. Under your construction of the policy, it is clearly not to the interest of your company to resist recovery by the plaintiff on the ground of illegal employment but the Stewart Dry Goods Company believes that it can prevent any recovery in this action based upon said alleged ground, and, therefore, our client will not give over its defense as to said ground to adverse interests.

"On behalf of our client, we further notify you that if any loss is sustained by it by reason of any act or acts of your company not in conformity with the rights reserved by it in said policy, the Stewart Dry Goods Company will look to your company for full indemnity for all such loss in addition to the indemnity expressly provided for in the policy.''

On March 4th the attorney for the insurance company in reply wrote this:

"We are willing that you as attorney for the Stewart Dry Goods Company should, and we shall with you cooperate fully with the view to securing if possible a judgment for the defense in this action.

It must be understood that if on the termination of the case it appears that there has been a violation of the statute regarding illegal employment the Fidelity & Casualty Company retains the right to disclaim liability by reason thereof, and it will then be incumbent upon the Stewart Dry Goods Company to pay any judgment, and the Fidelity & Casualty Company will insist that it is not liable under its policy for any such illegal employment.

"I desire you to understand that the Fidelity & Casualty Company does not in any way wish to do anything to jeopardize any interests of the Stewart Dry Goods Company but desires at all times to act for the best interests of its assured, and such is always its policy, but I have no authority to in any way enlarge the contract or make an additional policy making the Fidelity & Casualty Company responsible for any illegal employment, which policy you will surely understand it could not write. In my opinion it would be a violation of the law for the Fidelity & Casualty Company to make any such agreement, and it has not made such an agreement and will not make such an agreement.

"With this statement as full as I can possibly make it, it is up to you to determine whether or not you will permit the case to be tried or put me out of it as you have threatened."

To this, on the same day, the attorneys for the dry goods company made this reply:

"We write you now simply to say that we will stand upon the ground heretofore made clear to you in our previous letters, which position has never been deviated from in the least degree by us in any of the several conferences which we have had with you or any of the other representatives acting on behalf of your company.

"The statement in the last paragraph of your letter that we have threatened to put you out of the case is not in accordance with the facts. When you and Mr. Merit O'Neal conferred with Mr. Nettleroth this morning in your office and exhibited to him the telegram received by you today from your company, you stated that you construed said telegram to mean that the outcome of this case would in no way affect the question as to whether or not the injured

plaintiff's employment was illegal, and that if your company should hereafter resist paying indemnity on the ground of plaintiff's illegal employment, that such question would have to be tried out in an independent suit. Mr. Nettelroth stated to you and Mr. O'Neal that if you would enter into a written agreement to that effect on behalf of your company that the Stewart Dry Goods Company's own counsel would cooperate with you in the defense of this case to such extent as you might see proper to permit them to act. You stated that you had no authority to make such agreement, and in the absence of your power on your part to so agree, we beg to advise you that there is nothing else to which we will agree on behalf of our client, and that our client will stand strictly upon its rights as contended for in our previous letters to you.''

While this correspondence was going on, the attorneys for Miller offered to settle the suit for $6,500. The dry goods company offered to pay $1,500.00 of this if the insurance company would pay $5,000.00. This the insurance company declined to do upon the ground that $5,000.00 was all it was liable for in any event and that this was no compromise for it; that it had the right to try out the case and might be relieved of any liability on the ground that Miller had been employed illegally. The insurance company refused to make the settlement on these terms and no other terms being offered the case went on to trial, although the attorneys representing the insurance company as well as the attorneys representing the dry goods company had both looked into the facts of the case and both agreed that a settlement at $6,500.00 was a good settlement and should be made, but they could not agree as to who should pay it. The case afterwards came on for trial. The attorneys for the insurance company conducted the defense in the name of the dry goods company, the attorneys for the dry goods company being present and assisting in the defense. There was no disagreement between counsel on the trial, which resulted in a verdict for Miller for $10,000.00. An appeal was taken to this court and the judgment affirmed.

The Stewart Dry Goods Company paid the judgment and then brought this suit against the insurance company to recover the sum of $5,000.00, the amount of the policy, also $3,500.00 more, the excess of the judgment over and above the proposed settlement at $6,500.00 and

cost and expenses, upon the ground that the insurance company after taking over, controlling and failing in the defense of the damage suit will be deemed to have waived the matter of illegal employment and is estopped to set up the exception in the policy, also that there was fraud and bad faith on the part of the insurance company in controlling the defense to the suit conducted by it in the name of the assured and in declining to permit a proposed compromise to be made when offered, and that this rendered it liable for all the loss resulting therefrom regardless of the policy limit. The allegations of the petition were denied by answer. The case came on for trial before a jury. The proof showed practically the facts above stated and on the evidence the circuit court instructed the jury peremptorily to find for the plaintiff the amount sued for. The judgment was accordingly entered and the motion of the insurance company for a new trial being overruled, it appeals. Two questions are made on the appeal:

1. Will the insurance company, after taking over, controlling and failing in the defense of a damage suit against the insured be permitted to assert that the judgment for damages was based upon illegal employment and that the exception in the policy relieved it from all liability?

2. Is the insurance company liable for the loss caused by the failure to accept the proposed compromise of the case at $6,500.00?

(1) It will be observed that Miller sought a recovery on two grounds. One covered by the policy if Miller was lawfully employed, and the other not covered by it. The insurance company had the right to protect its own interest, for it would be liable under its policy if it turned out that the first ground was sustained and Miller was lawfully employed. The assured had a right to protect its interest, for it alone would be liable if the second ground of recovery was sustained. The interests of the two were clearly incompatible and each had a right to protect its own interest. In Interstate Casualty Co. v. Wallin's Creek Coal Co., 164 Ky. 778, this court thus stated the rule under such circumstances:

"The contract should be so construed as to afford protection to both parties, not giving either the right to subject the other to unnecessary loss or expense.

"Each of the parties to a contract like this has rights that the other must respect, and neither can by negligence or indifference or failure to act violate the spirit of the contract in such a way as to put upon the other loss that it need not have suffered."

The insured had no right to demand that the insurance company should surrender the defense of the case to it and the insurer had no right to demand the exclusive control of the defense or to do anything that was not to the interest of the insured. It was a delicate situation, and as we see the record, nothing was done that the insured had any reason to complain of or in fact did complain of at the time. After several conferences between counsel the case came up for trial. The insured and insurer each had two lawyers there who participated in the trial, and so far as appears nothing was done over the objection of the counsel for the insured and nothing was left undone that they thought should be done. In fact they themselves examined a number of witnesses, and though, as they say, they did this at the request of the counsel for the insurer, still the fact well illustrates how the trial was conducted. The plaintiff introduced evidence showing a right to recover on both grounds. The defendant introduced evidence tending to show he was not entitled to recover on either ground. The case was submitted to the jury for a general verdict. The jury found for the plaintiff and on appeal to this court it was held that both grounds of recovery were properly submitted to the jury.

The statute then in force, among other things, provided:

"Nor shall any child under sixteen years of age be employed at any occupation dangerous or injurious to health or morals, or to lives or limbs, and as to these matters, the decision of the county physician or city health officer, as the case may be, shall be final."

Construing this statute in Louisville, &c., Railway Co. v. Lyons, 155 Ky. 396, the court said:

"It was, of course, well known to the legislature that there might be reasonable difference of opinion as to whether certain employments other than those specifically named in the statute were dangerous, and the obvious purpose of thus confiding to an offi-

cer the right to decide whether an employment was dangerous or not was to furnish to employers a means by which they might save themselves from the penalties of the statute in the event they employed a child in an occupation concerning the dangers of which there might be room for reasonable difference of opinion.''

Concluding its opinion in the Miller case this court said:

"If, therefore, an employer sees proper to employ a child under sixteen years of age in an occupation where from the nature of the duties required and the physical surroundings reasonable men might differ as. to whether the occupation was or was not dangerous, without first procuring the decision of the county physician or city health officer on this question, the question of fact as to whether such occupation was or was not dangerous must of necessity be submitted to the jury; for if the employment is dangerous he has violated the statute, and if it is not dangerous he has not violated the statute.'' Stewart Dry Goods Co. v. Miller, 168 Ky. 676.

We therefore conclude that the insurer was within its right in refusing to relinquish the whole defense of the case to the insured and that the course followed at the trial practically protected the substantial rights of both parties. Appellee relies upon the following cases to sustain the judgment of the circuit court: Employers' Liability Assurance Corp. v. Chicago, &c., Coal & Coke Co., 41 Fed. 962; Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo. App. 327; Royal Mining Co. v. Fidelity & Casualty Co., 126 Mo. 104, 161 Mo. App. 185. 142 S. W. 438; Humes Construction Co. v. Philadelphia Casualty Co., 32 R. I. 246; Belt Automobile Ind. Ass'n v. Ensley Transfer & Sup. Co., 99 So. 787; Rosenbloom v. Maryland Casualty Co., 137 N. Y. Sup. 1064; Empire State Surety Co. v. Pacific Nat. Lumber Co., 200 Fed. 224; Columbian Three Color Co. v. Aetna Life Ins. Co., 183 Ill. App. 384; Steven v. Fidelity & Casualty Co., 178 Ill. App. 54; Utterbach-Gleason Co. v. Standard Accident Co., 184 N. Y. Sup. 862; Reiger v. London Guarantee & Accident Co., 202 Mo. App. 184.

But the facts in those cases were not like the facts here. In those cases the insurer had not acted in good

faith with the insured or given the insured an opportunity to protect its rights. The following cases sustain our conclusion that the insured did not waive its rights when it continued to defend the case after full notice to the insured of the facts and giving it a full opportunity to protect its rights: Little Cahaba Coal Co. v. Aetna Life Ins. Co., 192 Ala. 48; Compton Heights Laundry Co. v. General Accident, Fire & Life Co., 190 S. W. Rep., page 387; Mason-Henry Press v. Aetna Life Ins. Co., 211 N. Y. 489; Joseph Gordon, Inc. v. The Mass. Bonding and Ins. Co., 229 N. Y. 424.

Where there are grounds of liability asserted by the employe, for some of which the insurer is liable and for some of which the insured must stand the loss, neither party has the right, without fault on the part of the other, to exclude the other from participating in the defense in a case like this. The insurer here was not required to regard simply the charge of violation of law by the insured and refuse to defend the action, thus taking its chances that this sole ground of liability would be established. On the other hand, it had the right to proceed with the action, after giving full notice to the insured of the situation and giving it full opportunity to protect its rights. All it was bound to do was fairly to assert its rights under the policy in such a manner as would be notice to the insured that it did not waive those rights by proceeding with the defense of the action and also to do nothing in the defense of the action to the prejudice of the rights of the insured. If it took any action in the defense, either by doing or failure to do anything in violation of the spirit of the contract in such a way as to cause the insured a loss, the insured upon notice of this had the right to assume the control of the defense. Here nothing of this sort occurred and the insurer lost no rights by its course in defending the action.

(2)   It will be observed that the only proposition of compromise submitted to the insurer was a proposition that the employe would take $6,500.00 and that the case would be settled in this way if the insurer would pay $5,000.00 and the insured $1,500.00; no other proposition was submitted. As $5,000.00 was the limit of the insurer's liability this was no compromise for the insurer, for it was not liable at all if Miller was employed in violation of the statute. In Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, this court thus

laid down the rule in such a case as to the rights of the insured where the insurer refused to settle:

"If the insurance company, in response to a notice from the insured, had expressly denied its liability, we have no doubt that the insured might have effected a reasonable settlement of the claim and recovered from the insurance company the amount paid in settlement, provided, of course, the liability was covered by the policy and the injured party had an enforceable claim against the insured. This being so, we perceive no reason why, under the facts of this case, the rights and liabilities of the parties are not the same as if there had been a specific denial of liability by the insurance company and refusal on its part to take any further notice of the accident or injury."

In this case the insured had a right to go on and make the settlement at $6,500.00 and then sue the insured under the rule above quoted. But it could not fail to make the settlement and then hold the insurer liable because it refused to pay its total liability under the policy, when if Miller was employed contrary to the statute it was not liable at all. Aetna Life Ins. Co. v. Bowling Green Gas Light Co., 150 Ky. 735; Falls Paper Co. v. The Fidelity & Casualty Co. of New York, 92 Maine 574; Auerbach, et al. v. Maryland Casualty Co. of New York, p. 140, N. E. Rep. 577; Kingan & Co., Ltd. v. Maryland Casualty Co., 115 N. E. Rep. 348; New Orleans and Carrollton Railroad Co. v. Maryland Casualty Co., 114 La. 154; C. Schmidt & Sons Brewing Co. v. Travelers Ins. Co., 244 Pa. 286; Kennelly v. London Guarantee & Accident Co., Ltd. (184 App. Div. 1).

It remains to determine the rights of the parties in this action. The judgment in the Miller case determines that the insured was liable to Miller, but it did not determine on what ground it was liable. The record does not show on what ground the verdict of the jury was based and there can be no inquiry now into this question. The insurer is liable on the policy unless Miller was employed contrary to the statute. The burden of proof is upon the insurer to show that he was so employed and to establish the same facts as were necessary in Miller's case to make out a right in him to recover on this ground. The question to be submitted to the jury here is, whether Miller at the time was under sixteen

years of age and was employed in an occupation dangerous or injurious to health or morals or to life or limb, without the certificate of the county physician or health officer as the case may be.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.