## L. A. TUCKER TRUCK LINES v. BALTI-MORE AMERICAN INS. CO. OF NEW YORK.

### No. 11094.

Circuit Court of Appeals, Eighth Circuit.
July 13, 1938.

J. Grant Frye, of Cape Girardeau, Mo. (H. Howard Frye, of Cape Girardeau, Mo., on the brief), for appellant.

A. M. Spradling, of Cape Girardeau, Mo. (Dearmont, Spradling & Dalton, of Cape Girardeau, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This action was commenced in the State Court of Missouri by plaintiff L. A. Tucker Truck Lines to recover on an insurance policy. It was removed to the Federal Court on the ground of diversity of citizenship.

The facts were undisputed and were as follows: Defendant Insurance Company, by its policy, insured plaintiff in the sum of $5,000 against loss resulting from liability. On July 15, 1936, the plaintiff Truck Lines was employed by the Moon Distributing Company to transport a cargo of liquor of the value of $5,134.50 from Louisville, Kentucky, to Cape Girardeau, Missouri, where said Moon Distributing Company, the consignee, was located. While in transit, and just before it arrived at its destination, the liquor was stolen or hijacked.

Plaintiff demanded payment from the Insurance Company, which was refused. After plaintiff had paid the Moon Distributing Company for said loss, it brought suit against the Insurance Company to recover on the policy.

The petition alleged that the policy was in effect at the time of the loss; that a loss had been sustained under said policy; that plaintiff had duly performed all conditions on its part required to be performed, and had demanded payment from defendant, which defendant had refused; that plaintiff had been obliged to pay the owner of the liquor for the loss thereof; and asked for reimbursement of the amount of the loss.

The defendant Insurance Company demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action.

The demurrer was overruled and defendant filed an answer setting up various matters in defense, and among them the following:

"The defendant further states that, if plaintiff did pay to Moon Distributing Company the amount set out in its petition, it did so without lawful right or authority so to do; that the liability of plaintiff to the Moon Distributing Company, if any, had not been fixed and established as required by law and the contract of insurance; that the amount of the payment by plaintiff to the Moon Distributing Company, as set forth in plaintiff's petition, had not been fixed and determined according to law and the contract sued on in this cause, and that such payment, if any, was voluntarily on the part of plaintiff, and this defendant is not liable therefor; that in its contract with defendant, the plaintiff agreed that it would make no settlement of any claim arising under the contract sued on without the written consent of defendant; that in making its settlement with the Moon Distributing Company, plaintiff did not secure the written consent of defendant, but voluntarily made said settlement without the consent or knowledge of this defendant, and in violation of the terms and conditions of said policy."

Plaintiff in reply to the answer alleged:

"* * * plaintiff paid consignee, at a time when defendant had repudiated its obligations under said policy and had de-

nied all liability thereunder * * *. Plaintiff further says that the defendant, by its acts and conduct aforesaid, and by its repudiation of its obligations under said policy, and by its denial of any liability thereunder, waived any right as against plaintiff to require plaintiff to secure the written consent of defendant before settling with the consignee for such theft and losses."

The pertinent provisions of the policy in suit are set out in the margin.[1]

The case went to trial, and among the evidence introduced by plaintiff was the testimony of H. G. Schmitz who testified:

"Moon Distributing Company instructed us if we did not pay them they would file suit for the loss of the merchandise. We furnished proof of loss to the Baltimore American Insurance Company of New York and made a proper claim to them. Two auditors came down checked our files and records as to premiums being properly paid. That was around August or September following the loss and outside of that they sent one adjuster down here named Rowse. I made demand for settlement of this policy and they wouldn't pay it.

"Q. Did the company or its officers or agents or any of the adjustment companies,

---

[1] "The Baltimore American Insurance Co. of New York * * * does insure L. A. Tucker Truck Lines * * * from May 25, 1936, until canceled * * * against loss resulting from the liability of the assured to others for loss or damage to lawful goods and merchandise consisting principally of general merchandise caused by any of the perils enumerated below for which loss or damage the assured is liable * * *.

"(Endorsement I) (3) It is expressly understood and agreed that in the event of loss by theft or pilferage the liability of this company shall be limited as follows: On shipments of wines, beers, and/or liquors—$5,000 * * * all other terms and conditions of policy remaining unchanged.

"(Endorsement II) (4) This policy covers the legal liability of the assured as carrier and/or bailee and/or warehouseman under tariff and/or bill of lading and/or shipping receipt issued by the assured for direct loss or damage from perils specified in policy to which this form is attached on shipments of lawful goods and/or merchandise consisting principally of general merchandise while loaded for shipment on and/or in transit in or on the motor truck and/or trucks and/or trailers in the service of the assured within the United States and Canada:

"(Endorsement III) (7) It is the intent of this insurance to cover the herein described shipments against the risks of as herein provided while in the custody and control of the assured and/or the truck men hauling for them while in or on trucks * * * until safely delivered to * * * consignee * * *.

"(8) This policy insures against direct loss or damage to such goods by * * * theft (including pilferage), it being understood and agreed that each claim for loss by theft or pilferage shall be adjusted

separately and from the amount of each such loss, when determined, the sum of $25.00 shall be deducted * * *.

"(9) Any and all other clauses and conditions contained in the policy to which this form is attached, that are inconsistent herewith are hereby waived.

"(11) It is the purpose of this insurance to indemnify the assured for their liability as a carrier only to the amount which they are obliged to pay and do pay on such merchandise by reason of losses caused as herein defined.

"(12) The assured, whenever requested, shall aid in securing information and evidence and the attendance of witnesses and shall defend any action at law or in equity through such counsel as this Company may direct, but at this Company's expense. The assured shall make no settlement of any claim arising hereunder nor incur any expense without the written consent of this Company. The Company shall have the right to settle any claim or suit at its own cost at any time.

"(17) Suit against Company. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the assured shall have fully complied with all the requirements of this policy. No suit or action shall lie against the Company to recover for any loss under this policy unless it shall be brought by the assured for loss actually sustained and paid by the assured, nor unless such action be brought within ninety (90) days after the payment of such loss or damage, provided that where such limitation of time is prohibited by the laws of the State wherein this policy is issued, then, and in that event, no suit or action under this policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such State * * *."

Western Adjustment and Inspection Company's agent, any of those people, tell you why they wouldn't pay it? A. Never said a word wouldn't even answer me."

Exhibit D introduced by plaintiff without objection is as follows:

"Western Adjustment and Inspection Company

"Pierce Building, St. Louis, Mo.

"November 18, 1936.

"Mr. J. Grant Frye, Attorney at Law, Missourian Building, Cape Girardeau, Missouri.

"Dear Sir: Re: L. A. Tucker Truck Line (Moon Distributing Co.—Baltimore American Ins. Co. Policy #T M-16057).

"We have your letter of inquiry of November 13th, asking for 'the reason you do not pay this policy'.

"This is to advise that the Insurance Company instructed us to decline any and all liability to the L. A. Tucker Truck Line for various causes, and they have not specified those causes.

"Should you care to discuss this matter with the writer if you are in St. Louis at any time, he will be pleased to have you call; or you may call on Mr. E. V. Cole, Manager of our Cape Girardeau office.

"Very truly yours,

"Walter W. Rowse, Adjuster".

Mr. J. Grant Frye testified for plaintiff as follows:

"I talked to D. O. Layton in charge of their St. Louis office on December 1, 1936. * * * In further conversation with Mr. Layton, I told him we wanted our money; these people had to have it. I asked Mr. Layton why it was they wouldn't pay this policy. I asked him what his reason was, what explanation he could give. He declined to give any. He said, 'I don't know as I can say, but you see Mr. Harold Knebel'.

"I talked to Mr. Knebel and I asked Mr. Knebel the same thing, what was wrong, why they wouldn't pay this policy. He stammered a while and finally said they didn't care to discuss their reasons; that was the answer of Mr. Knebel in their office."

Evidence was introduced to the effect that for about four months after the liquor was stolen, plaintiff made numerous requests to the Insurance Company for payment of the loss, and co-operated with the Insurance Company and with the State Police and Federal Department of Justice in attempting to discover who had stolen the liquor; that the Insurance Company refused to pay the loss and refused to give its reasons for denying liability; that plaintiff then paid the amount of the loss to the consignee without the consent of the Insurance Company; that the consignee had threatened to sue the plaintiff, but no suit had been commenced; that at the time the liquor was stolen, plaintiff owned one share of stock in the consignee, the Moon Distributing Company.

Plaintiff Truck Lines owned about twenty trucks and hauled anything its customers directed it to haul. The only liquor which had been hauled by plaintiff was the load which was hi-jacked, and a load hauled the previous week.

Plaintiff did not have a permit from the Interstate Commerce Commission to haul freight in interstate commerce; but it did have a Missouri Interstate Permit from the Public Service Commission of Missouri to operate as a freight-carrying motor carrier over an irregular route in interstate commerce. Plaintiff also had on file with the Interstate Commerce Commission an application to do an interstate business between Missouri and Louisville, Kentucky, filed in January, 1936. This had not yet been acted upon. The plaintiff had filed a rate or tariff with the I. C. C. and it had been approved. There was testimony to the effect that there was a provision or regulation of the I. C. C. which allowed truck companies to operate until the Commission finally made a ruling on their applications.

At the close of plaintiff's case, defendant made a motion for a directed verdict. The Court sustained said motion and charged the jury that under the policy, it was necessary for plaintiff to have the consent of the Insurance Company before settlement was made; that no suit was ever instituted by the consignee to establish liability, and the Insurance Company did not have an opportunity to defend the insured against the claim of said consignee. Plaintiff excepted.

Plaintiff further excepted on the ground that the right of the Insurance Company to furnish counsel and the provision that no settlement should be made without the written consent of defendant, was waived by the refusal of defendant to pay the policy or assume any liability thereunder.

Plaintiff contends that by denying any and all liability under the policy, defendant

waived and abandoned the requirement of written consent before settlement.

Plaintiff further contends that under the evidence, plaintiff was liable to consignee as a common carrier, and since there was nothing in the policy requiring a legal adjudication of plaintiff's liability, such adjudication was not a condition precedent.

We think the Court erred in directing a verdict for defendant and that the question of waiver was for the jury in view of the testimony introduced by plaintiff.

There is a showing that in view of all the circumstances, plaintiff proceeded in a prudent. manner in making the settlement. There is no showing that too great an amount was paid.

· The question of·waiver was the principal one in the case, and the evidence made it one for the jury to pass upon.

This question of waiver was, as we have seen, raised by the reply in the case; it was the foundation of the charge of the Court to the jury wherein it was stated:

"The policy of insurance sued on in this case is a written contract between Tucker Truck Line and the Insurance Company. The suit in this case is on that contract and the parties are bound by the terms and conditions in the contract.

"* * * The evidence in this case shows that the Tucker Truck Line did settle with the Moon Distributing Company without the written consent of the insurance company and that no suit was ever instituted by the Moon Distributing Company against the Tucker Truck Line to establish liability, and the insurance company did not have an opportunity, under the terms of the policy, to defend the Tucker Truck Line against the claim of the Moon Distributing Company.

"* * * Under the terms of this policy and the undisputed facts in evidence in this case, the court is of the opinion that the plaintiff is not entitled to recover and directs you to render a verdict for defendant."

This was the principal question discussed in the briefs of counsel on the appeal to this Court.

Let us examine the limitations to waiver as given to it in the authorities:

In 36 C.J. p. 1116, the following statement is made:

"Where Insurer Delays or Refuses to Defend. The provision against settlement by insured cannot be taken advantage of by insurer, where it unreasonably delays to take any action, after notice of the claim, or where it breaches its contract, by refusing to defend or settle and denying liability, or by withdrawing from the case, in either of which cases insured is released from its agreement not to settle, and has the right, provided he acts in good faith and with due care and prudence, to make a settlement of the claim or suit; and the amount paid in such settlement, if reasonable, may be recovered from insurer. This rule applies, although the policy also provides that no action shall lie against insurer as respects any loss under the policy unless it shall be brought by insured himself, to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue, the refusal to defend amounting to a waiver of such provision. Such settlement, in the absence of proof to the contrary, is presumptive evidence of ·a liability, and of the amount thereof. But insurer is not absolutely bound by such settlement; it must further appear that the loss or liability was within the policy, and where the policy merely permits, but does not require, insurer to defend, its refusal to do so does not estop it from questioning the reasonableness of a settlement made by insured, or the fact of insured's liability. * * *"

In Rieger v. London Guarantee & Acc. Co., 202 Mo.App. 184, 215 S.W. 920, wherein the Insurance Company denied liability, the Court said (page 930):

"The answer pleaded that such payments were voluntary. The facts show that they clearly were not. Besides, the company had breached its contract, and, under these circumstances, the insured had the right to, in good faith, make the best compromise he could ·and is not bound to submit to an adverse judgment."

In Kansas City, M. & B. R. Co. v. Southern Ry. News Co., 151 Mo. 373, 52 S. W. 205, 45 L.R.A. 380, 74 Am.St.Rep. 545, wherein the News Company refused to defend, the Court said· (page 209):

"The fact that the amount of the judgment was determined by agreement would not take the judgment without the protection of the defendant's covenant 'to indemnify the plaintiff for all damage to which it may be subject or which it may have to pay.' The only effect the consent could have would be to reduce the judgment from conclusive to presumptive evidence only of the defendant's liability on

its contract, and of the amount thereof, and to afford it the right and privilege of showing either that the judgment was procured by a fraudulent collusion, was not founded upon a legal liability, or that it exceeded such liability."

In Compton Heights Laundry Co. v. General Acc., F. & L. Assur. Corp., 195 Mo.App. 313, 190 S.W. 382, the Court said, in reference to a waiver (page 385):

"It is a well-known practice concerning all transactions to require of any one to take advantage of his rights at a proper time. It is also held in many instances that a party has relinquished or refused to accept a right in such a way that the contention cannot thereafter be entertained that such right was ever possessed. It must also be remembered, in considering a case of this character, that the insured, if not protected by the terms of his policy, should have a free hand to proceed, as soon as practical, in his own way. This right is as essential to the insured as are the provisions in the policy giving the insurer exclusive control of accidents covered by its policy. * * *

"Under the well-established rules of law in this state governing the actions of an insurer in a case of this character, unquestionably there was sufficient testimony upon which to base the conclusion that defendant waived the provisions of its rider."

In Murch Bros. Const. Co. v. Fidelity & Cas. Co., 190 Mo.App. 490, 176 S.W. 399, in which case counsel for the Insurance Company withdrew while the case was unfinished, the Court said (page 405):

"When, therefore, counsel for the Casualty Company withdrew from the case on the theory that all that was left in it was ordinance liability, he was acting under a misconception. Neither he nor his client was justified in then abandoning the defense. Doing so, it was at their own risk and peril. By doing so, they left the Construction Company free to handle the case in its own way, to make any fair compromise and to hold the Casualty Company to its bond, if it should appear that the accident happened to Butz in consequence of acts of negligence as at common law."

Other cases are in accord. See St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S. Ct. 400, 50 L.Ed. 712; Royal Insurance Co. v. Martin, 192 U.S. 149, 24 S.Ct. 247, 48 L. Ed. 385, wherein the Court said (24 S.Ct. page 251):

"A general, absolute refusal to pay in any event, or a denial by the company of all liability under its policy, dispensed with such formal proofs as a condition of its liability to be sued, and opened the way for a suit by the assured in order that the rights of the parties could be determined by the courts according to the facts as disclosed by evidence."

See, also, John Alt Furniture Co. v. Maryland Casualty Co., 8 Cir., 88 F.2d 36; Continental Casualty Co. v. Shankel, 10 Cir., 88 F.2d 819; Indemnity Ins. Co. of North America v. Forrest, 9 Cir., 44 F.2d 465; Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S.W. 217, L.R.A. 1915F, 958; Weiss v. Continental Ins. Co., Mo.App., 61 S.W.2d 392. In this last case the Court said (page 395):

"Having been inserted in the policy for the benefit of defendant, the provision in question was one which might be waived by it (26 C.J. 281, 390); and the waiver in this case is to be placed upon a previous denial of liability. * * *

"We are not to be understood as holding that defendant's mere investigation of the loss was a denial of liability, or that it was to be deprived of its right to conduct an investigation by reason of the frequent demands of the insured, or their representative, that the loss be adjusted. * * * But separate and apart from the question of the investigation was the proof of acts and conduct which tended to establish a fixed purpose to deny liability; and a denial of liability is a waiver of the right to insist upon an examination of the insured or an inspection of his papers (26 C.J. 411), just as it is a waiver of other and similar conditions in the policy."

The Court further said:

"We are not saying that the evidence disclosed a waiver as a matter of law, but rather that the evidence tending to show that defendant at all times took the position that the fire was an incendiary one, and that it was not bound to pay anything, was sufficient, on conflicting facts, to take the question of waiver to the jury."

In Burgess v. Mercantile Town Mut. Ins. Co., 114 Mo.App. 169, 89 S.W. 568, the Court said (page 571):

"The requirement of notice and proof of loss is a formal condition introduced into the policy solely for the benefit of the insurer, and it may be waived by it. * * *

806

"The question of waiver is usually a mixed question of law and fact. In a case of express waiver, and in a case where the act or conduct of the insurer has been so definite and certain as to amount to a waiver in that behalf, in accordance with the settled rules of law; that is, in a case where the evidence of waiver is so convincing that reasonable men could not differ as to the result thereof, the court is authorized to declare a waiver as a matter of law. Ordinarily, however, it is a question of fact for the jury, or for the court sitting as a jury trying the facts. It is the province of the court to determine whether or not there is evidence to support the alleged claim of waiver. The weight and sufficiency of the evidence is purely a question for the jury, or the court sitting as a jury trying the facts. Each case must depend upon its own peculiar circumstances and surroundings. The doctrine of this court is that ordinarily, a waiver is a question of intention. It is often dealt with and ascertained in accordance with the principle of estoppel."

See Okey v. State Ins. Co., 29 Mo.App. 105; Cooley's Briefs on the Law of Insurance, Vol. 3, pp. 2778, 2779.

Other questions besides the one involving waiver have been discussed in the briefs of counsel; but as the question of waiver is, in our opinion, decisive of the case, we refrain from discussing them.

For the error pointed out, we think the judgment should be reversed and the case remanded for further proceedings.

It is so ordered.