## TRADERS & GENERAL INS. CO. v. RUD-CO OIL & GAS CO.

### No. 2426.

Circuit Court of Appeals, Tenth Circuit.

June 26, 1942.

Mart Brown, of Oklahoma City, Okl. (Ames, Monnet, Hayes & Brown, of Oklahoma City, Okl., on the brief), for appellant.

Hicks Epton, of Wewoka, Okl. (Thos. J. Horsley, of Wewoka, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Two related questions are presented here on appeal: (1) whether bodily injuries and death, alleged to be caused by the negligence of the assured, are within the coverage of a public liability insurance policy issued to it by the insurer, and (2) does assured's voluntary compromise and settlement of claims and suits against it for such bodily injuries and death bar a recovery on the policy which provides "the assured shall not voluntarily assume any liability, settle any claim, except at the assured's own cost. * * *"

On February 11, 1939, the Traders & General Insurance Company (herein sometimes called insurer) issued to the Rudco Oil and Gas Company (herein sometimes called assured) its standard type public liability insurance policy covering certain oil field operations of Rudco. The policy covered the legal liability of the assured for bodily injuries and death to persons.

arising out of its operations, limited to $5,000 for one person, or $10,000 for more than one person. The insurer agreed to defend, in the name and on behalf of the assured, any suit against it seeking damages on account of bodily injuries or death, or until the insurer should elect to effect a settlement thereof. In addition to the provision in the policy against voluntary settlement by the assured, it was further agreed that no action would lie against the insurer to recover any loss or expense alleged to be covered by the policy, until the amount of such loss was made certain either by final judgment against the assured after trial of the issues, or unless otherwise agreed in writing.

It was also stipulated that in undertaking to investigate accidents and claims, and in the compromise and settlement of the same, the insurer should serve the assured in such manner as the insurer deemed best and expedient and would be liable to the assured only for wilful breach of its undertaking.

The policy contained a rider which exempted from its coverage any injury incurred "away from or off the premises owned, leased or occupied by the named assured" or for "any injury incurred either on or off the premises arising out of, or resulting from, the delivery, sale, or distribution of natural gas."

While the policy was in force, and on or about November 27, 1939, Carl H. Nelson, his wife, and three minor children filed suits against Rudco in the aggregate sum of $63,000, alleging negligent operation of an oil and gas lease by Rudco, which caused a fire and explosion on October 14, 1939, and resulted in bodily injuries and death to members of the Nelson family. After investigation, the Traders & General denied liability under the policy for the asserted losses on the grounds: (1) the injuries complained of, and for which claims were asserted, were incurred away from, or off the premises owned, leased or occupied by the assured, and (2) the injuries incurred arose out of, or resulted from, the delivery, sale or distribution of natural gas, and therefore fell outside the coverage of the policy.

The parties agreed that the Traders & General should defend the suits "without waiving any of your rights to defend on the policy of insurance should the occasion arise for the institution of a suit thereon. * * * In other words, the rights of the respective parties shall not be jeopardized, altered, or changed by virtue of any investigation or the defense of said suits but shall be determined by the terms and conditions and circumstances surrounding the insurance policy or policies. * * *." Notwithstanding this agreement, while the damage suits were pending, and on January 14, 1940, Traders & General instituted a suit against Rudco, and the plaintiffs in the damage suits, for a judgment declaring its non-liability under the policy.

The Rudco was convinced of its legal liability and was "morally certain" that if the suits were tried the ultimate recovery would far exceed the limits of the policy. Rudco believed that a trial of the issues relating to coverage, raised by the suit for declaratory judgment, would greatly prejudice the defense of the damage suits, and sought to induce Traders & General to refrain from the trial of the declaratory judgment action until the damage suits were tried or settled, but Traders & General refused unless Rudco would agree to pay an attorney fee of $1,000 or $1,500 incurred in the defense of the damage suits, in the event Traders & General succeeded in establishing its non-liability under the policy of insurance.

Meanwhile, with full knowledge of Traders & General, Rudco negotiated with the plaintiffs in the damage suits, obtained an offer of settlement in the total sum of $17,000, and secured the offer of Carter Oil Company, a joint tort-feasor, to contribute one-half of the amount tentatively agreed upon in settlement. In a letter dated March 15, 1940, to Traders & General Rudco stated: "* * * We are morally certain that we could not escape a total liability of less than about double the amount of these settlements. We are also convinced that the division between Carter and Rudco, that is, fifty-fifty, is a fair and equitable division of responsibility * * *. We cannot wait for a trial in the case brought by you for a declaratory judgment and still avail ourselves of this proposition of settlement. The settlement must be accepted immediately and without delay and we are thoroughly convinced that it is entirely too favorable to Rudco to warrant a rejection of same. * * * We hereby request and demand that you settle each and all of these cases * * * within the terms of the said insurance policy * * * and

hereby warn you that upon your failure to so do the assured will hold you responsible for any and all damages that may result to it and for any judgment that may be rendered against it in excess of the face of your policy, as well as the full amount of your insurance policy. * * * In the event you believe that these settlements are not fair, just and equitable settlements on behalf of Rudco or that the division of responsibility between Rudco and Carter is not fair, just and equitable, then we request and demand that you so state particularly pointing out the grounds of complaint and indicate your willingness to co-operate in any effort to either reduce the amount of the settlements or the proportions to be borne by Rudco. These suits are too dangerous, in our judgment, on behalf of Rudco to warrant the hazard of trying them."

Traders & General refused to agree to the settlements, or to participate therein, contending: (1) that Rudco was free from negligence and therefore not liable for the injuries; (2) that the proffered compromise and settlement was unreasonable, and (3) that the policy of insurance did not cover the loss. "For these reasons we contend we are not bound in law, either to settle, agree to settle, or pay any part of any judgment. * * * These are our contentions and will be our legal position if these cases are settled and suit is brought by your company to enforce liability under the policy." Traders & General refused to contribute $4,500 to the proposed settlement as suggested by Rudco, but "purely as a matter of policy" agreed to contribute $2,000 to any settlement made.

After much correspondence between the parties, Rudco through its attorneys informed Traders & General that on an appointed date the proposed settlements in the damage suits would be presented to the court, stating: " * * * At that time the reasonableness of the settlements, as well as the reasonableness of the division of responsibility between Rudco and Carter will be submitted to the court for determination. If you have any evidence that you care to offer on any of the issues to be there presented and determined, you will be given full opportunity to present same and assist in any other way in reducing the amount of the settlements. * * * Rudco hereby requests and demands that you have a representative present to participate in all negotations.

* * * These matters cannot be further delayed and Rudco hereby vouches you into these cases as its insurance carrier, all of course, without prejudice to your rights in any litigation between you and Rudco relative to the validity or non-validity, coverage or non-coverage of the insurance policy in question. * * * We have gone into these matters very thoroughly and are convinced that these settlements are advantageous to Rudco and that it cannot afford to hazard the outcome of the trials on these claims. * * *." Traders & General consistently refused to agree to the settlements, participate therein, or to accept any liability but steadfastly adhered to its former position in regard to the settlements and liability.

After Rudco had paid its agreed share of the judgment and after due demand, it instituted this suit on the policy to recover the amount paid in compromise, alleging substantially the facts herein related. Traders & General answered by reasserting its non-liability. By amendment to its answer it invoked the provision of the policy prohibiting settlement without its consent, and alleged that Rudco violated the terms of the policy by entering into the voluntary settlement over its protest.

The trial court found and concluded that the injuries and death, for which damages were claimed, occurred on the premises leased and occupied by Rudco; that the explosion did not result or arise out of the "delivery, sale, or distribution" of natural gas by the Rudco, as those words are used in the exempting clause of the policy. The court further found and concluded that the explosion and resulting injuries were caused by the direct and proximate negligence of Rudco; enumerating specifically the negligent acts of Rudco which caused the explosion. It further found and concluded that the settlements were fair, just and reasonable; that they were advantageously made in good faith, without any collusion. That by its course of conduct in refusing to recognize the patent liability of Rudco; by denial of liability under the policy and its refusal to negotiate for settlement, or agree to a reasonable settlement, coupled with the filing of the suit for declaratory judgment, after agreeing to defend with reservation of rights, and its refusal to hold the same in abeyance until the damage suits were litigated, evidenced that its primary and

paramount interest was to establish its non-liability under the policy and not the defense of the claims and suits against its assured. The court further found that Traders & General did not invoke the provision in the policy against voluntary settlement by the assured before the settlement of the suits by Rudco, but relied solely upon non-liability of Rudco and non-coverage under the policy; consequently, the court concluded as a matter of law, that Traders & General waived and was estopped to invoke the provision against settlement, without its consent, after Rudco had settled the suits in reliance upon the declared position of the insurer. The trial court gave judgment for the amount of the settlements and on appeal Traders & General reasserts its contentions in the trial court.

The Carter Oil Company, as the predecessor of Rudco, developed the oil and gas lease in question, and for a number of years produced the oil therefrom by electrically powered equipment. In addition to the oil and gas lease, the Carter Oil Company acquired a lease upon the surface rights to the land, co-extensive with the oil and gas lease, by the terms of which Carter was granted the exclusive surface rights to the lease, so long as the Carter paid the stipulated rental not to exceed a period of ten years. A part of the said lease was designated as a campsite and Carter's employees and others were permitted to construct houses thereon, which they owned and in which they resided, and other buildings and residences were constructed on the lease. In the development and operation of the lease, Carter laid numerous pipe lines over and across the lease, some of which were used in the transportation of oil from wells to tanks, and from tanks to other connecting pipe lines necessary and incidental to production and transportation. Other pipe lines laid upon the lease were used for the transportation of natural gas for domestic purposes by the employees and others residing on or off the campsite, but on the oil and gas lease.

On March 14, 1939, the Carter Oil Company assigned the oil and gas lease, subject to the surface lease, and excepted therefrom all buildings located thereon, together with the water, gas, and telephone lines used in connection therewith, and Rudco acquired the lease subject to this reservation and exception. When Rudco acquired the lease, it elected to produce the oil from the wells by the use of gas engines; the evidence shows, and the court found, that this was the usual and ordinary method employed for pumping oil wells in this vicinity. To obtain gas from a high pressure line located on or near the lease it was necessary to rearrange and reconstruct the gas lines located thereon. By this method of operation, Rudco permitted gas from a high pressure line to escape, apparently through a defective valve into an unused and defective low pressure domestic line which entered the campsite, over and near which was located the house occupied by the Nelson family. The explosion was directly caused by escaping gas from the defective line. Rudco either did not know that gas had entered this line, or made no test to determine the condition or fitness of the same.

All the buildings, including those located on the campsite, of which the Nelson house was one, and all the pipe lines involved in the explosion were upon the leasehold estate owned and occupied by Rudco. Regardless of who owned the campsite or the surface rights on the lease and the buildings thereon, or who owned the gas line from which escaped the gas, causing the explosion, it is plain that the explosion occurred on, and not "off" the premises leased and occupied by Rudco. The gas which caused the explosion was transported by Rudco and used by it in the operation of its lease, and particularly in supplying fuel for the engines which pump the wells, and for no other purpose. It cannot be said under these facts that these operations amounted to a "delivery, sale, or distribution" of natural gas in a manner to exclude such operations from the coverage of a policy which by its terms and conditions was purposed to cover the operations of an oil and gas lease, a necessary part of which was the pumping of the wells thereon. It is unnecessary to indulge in the technical refinements of the terms used and relied upon by the insurer. No such restricted and tortured construction can be used to narrow the coverage under the policy and to avoid liability thereunder.

The coverage under the policy of insurance for the injuries sustained was plain and not open to serious doubt, and the negligence of Rudco and its resultant liability is patently apparent to one schooled in the law of negligence. The injuries

to the parties involved in the explosion were serious and the manifest element of damages was grossly apparent and undenied. Indeed, the Traders & General admit that the amount paid in settlement of the cases was reasonable and just but denied that Rudco was liable therefor. We readily agree with the trial court on the question of the liability of Rudco for the injuries and the coverage under the policy.

■ The question remains whether Rudco may now assert coverage under the policy for its legal liability because it consummated a mutually advantageous settlement, without the consent of the insurer and while the insurer was denying coverage, but agreeing to defend, with reservation of rights. Otherwise stated, the question is whether under the attendant circumstances Traders & General has, by its course of conduct, precluded itself from exercising its prerogative to control the course of the litigation. Contrary, in part, to the trial court's views we do not think that by its declared position before settlement, Traders & General waived any of the conditions of the policy. Rather we think, the scope of inquiry is whether by its course of conduct it violated its correlative duty to recognize the manifest interest of the assured, thereby placing itself beyond the realm of permissible control.

■ It is well settled that if the potential loss is within the limits and coverage of the policy and the insurer accepts liability therefor, by agreeing to defend the claims or suits against its assured, and to pay the losses when established, the insurer is accorded the absolute control of the litigation. It may elect to compromise and settle the claims before suit is filed or after, or it may elect to defend in the name of the assured, and the exercise of its discretion is not subject to challenge by the assured. The assured may not do more than cooperate with the insurer in the defense of the claim or suit. Boling v. New Amsterdam Casualty Co., 173 Okl. 160, 46 P.2d 916; Kindervater v. Motorists Casualty Insurance Co., 120 N.J.L. 373, 199 A. 606; Wisconsin Zinc Co. v. Fidelity & Deposit Co. of Maryland, 162 Wis. 39, 155 N. W. 1081, Ann.Cas.1918C, 399; annotations in 34 A.L.R. 730, 735; 43 A.L.R. 326, 328; 71 A.L.R. 1467, 1472; 36 C.J. 1113, 1115, and Vol. 5 of Couch on Insurance, Section 1175f. If, however, the insurer denies liability for the asserted claims and refuses to defend in the name of the assured or to acknowledge any duty or obligation arising under the contract of insurance, the assured is released from the covenant against settlement or interference and may assume control of the litigation, defend in his own name, or effect a reasonable and prudent settlement of the claims, or suits, and thereafter assert his rights under the policy; in which event, his right to recover against the insurer is generally measured by the coverage under the policy and the reasonableness of the settlement. Continental Casualty Co. v. Shankel, 10 Cir., 88 F.2d 819, 824; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 182, 26 S.Ct. 400, 50 L.Ed. 712; Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S.W. 217, 219, L.R.A.1915F, 958; Southern Ry. News Co. v. Fidelity & Casualty Co of New York, Ky., 83 S.W. 620; Butler Bros. v. American Fidelity Co., 120 Minn. 157, 139 N.W. 355, 44 L.R.A.,N.S., 609; Thomas Kilpatrick & Co. v. London Guarantee & Accident Co., 121 Neb. 354, 237 N.W. 162, 165, and L. A. Tucker Truck Lines v. Baltimore American Ins. Co. of New York, 8 Cir., 97 F.2d 801, 805; Farrell v. Nebraska Indemnity Co., 183 Minn. 65, 235 N.W. 612, and Vol. 5 of Couch on Insurance, Section 1175f.

■ The rule is again modified if the loss asserted against the assured exceeds the limits of the policy, liability for which is admitted by the insurer to the extent of the policy limits. In these circumstances, both the assured and the insurer have a pecuniary interest in the ultimate liability to the third party and each of them become vested with the right to protect that interest, commensurate with the extent of its potential liability. Douglas v. United States Fidelity & Guaranty Co., 81 N.H. 371, 127 A. 708, 37 A.L.R. 1477; Fidelity & Casualty Co. of New York v. Stewart Dry Goods Co., 208 Ky. 429, 271 S.W. 444, 43 A. L.R. 318, and Brassil v. Maryland Casualty Co., 210 N.Y. 235, 104 N E. 622, L.R.A. 1915A, 629.

■■ Where, as here, each has a potential liability, the insurer is obligated by contract to defend the suits or claims in the name of assured and to pay the losses incurred to the extent of the limits of its policy. Its obligation to defend and to pay is primary and paramount; consequently, its right to control the litigation is first and paramount, an essential part of which is the right to insist upon the co-operation

of the assured, and the assured may not interfere by voluntary assumption of liability or by arbitrarily insisting upon settlement of the claims or suits. But, the rights of the insurer in these circumstances are not absolute, they are subject to moderation by the rule of right and justice. Exclusive authority to act does not necessarily mean the right to act arbitrarily. Douglas v. United States Fidelity & Guaranty Co., supra. The right to control the litigation in all of its aspects carries with it the correlative duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties. Boling v. New Amsterdam Casualty Co., supra; Ohio Casualty Insurance Co. v. Gordon, 10 Cir., 95 F.2d 605, 610; Maryland Casualty Co. v. Cook-O'Brien Construction Co., 8 Cir., 69 F.2d 462, 464; Maryland Casualty Co. v. Elmira Coal Co., 8 Cir., 69 F.2d 616, 618, and Brassil v. Maryland Casualty Co., supra. See Vol. 5, Couch on Insurance, Section 1165b. When the insurer undertakes the defense of the claim or suit, it acts as the agent of its assured in virtue of the contract of insurance between the parties, and when a conflict of interest arises between the insurer, as agent, and assured, as principal, the insurer's conduct will be subject to closer scrutiny than that of the ordinary agent, because of his adverse interest. Douglas v. United States Fidelity & Guaranty Co., supra. Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N.W. 257, petition for rehearing granted and subsequently decided in 235 N.W. 413, and G. A. Stowers Furniture Co. v. American Indemnity Co., Tex.Com.App., 15 S.W.2d 544.

Some courts permit a recovery by the assured against the insurer for losses sustained in excess of the limits of the policy, based upon the negligent conduct of insurer, resulting in losses to the assured in excess of the limits of the policy. Douglas v. United States Fidelity Guaranty Co., supra; Hilker v. Western Automobile Ins. Co., supra; Cavanaugh Bros. v. General Accident F. & L. Assur. Corp., 79 N.H. 186, 106 A. 604, and Ballard v. Ocean Accident & Guarantee Co., 7 Cir., 86 F.2d 449. See, also, Anderson v. Southern Surety Co., 107 Kan. 375, 191 P. 583, 21 A. L.R. 761. Other courts hold that mere negligence of the insurer in the conduct of the litigation is insufficient to justify a recovery by the assured but imposes upon the insurer the duty to exercise good faith only. Auerbach v. Maryland Casualty Co., 236 N.Y. 247, 140 N.E. 577, 28 A.L.R. 1246; American Mutual Liability Co. v. Cooper, 5 Cir., 61 F.2d 446; Brassil v. Maryland Casualty Co., supra; Burnham v. Commercial Casualty Insurance Co., 10 Wash. 2d 624, 117 P.2d 644, and Noshey v. American Automobile Ins. Co., 6 Cir., 68 F.2d 808, and Best Building Co. v. Employers' Liability Assur. Corp., 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464. The divergent views are discussed, and the prevailing rule well stated in City of Wakefield v. Globe Indemnity Co., 246 Mich. 645, 225 N.W. 643, 645. "It is not bad faith if counsel for the insurer refuse settlement under the bona fide belief that they might defeat the action, or, in any event, can probably keep the verdict within the policy limit. * * * A mistake of judgment is not bad faith." But, "where the insured is clearly liable and the insurer refuses to make a settlement, thus protecting the insured from a possible judgment for damages in excess of the amount of the insurance, the refusal must be made in good faith and upon reasonable grounds for the belief that the amount required to effect a settlement is excessive. * * *."

■ Oklahoma states the rule as follows: "* * * insurer must act honestly to effectively indemnify and save the insured harmless as it has contracted to do— to the extent, if necessary, that it must make whatever payment and settlement as honest judgment and discretion dictate, within the limits of the policy, and an abandonment of this duty to act subsequent to its assumption in part constituted bad faith." Boling v. New Amsterdam Casualty Co., supra [173 Okl. 160, 46 P.2d 919]. See also Ohio Casualty Ins. Co. v. Gordon, supra, and annotations in 34 A.L.R. 730, 750, 37 A.L.R. 1484, 43 A.L.R. 326, 329, 71 A.L.R. 1467, 1485, and 131 A.L.R. 1499.

In all the cited cases, the announced rule has direct application to a state of facts wherein the assured refrains from interference in the litigation but awaits the final outcome before asserting its rights under the policy. We think, however, the rule applies with equal force to a prudent settlement made by the assured in the face of a potential judgment far in excess of the limits of the policy. Why should the assured be required to wait until after the storm before seeking refuge.

■ Therefore, as a guide for the determination of the question presented here,

we think it may be fairly stated that before Traders & General may interpose the voluntary settlement made by Rudco as a bar to recovery upon the policy, it must be shown that it acted, not alone in furtherance of its own interest, but it must also appear that it acted in good faith and dealt fairly with the assured. Its manifest attitude and course of conduct must have some legal justification and factual basis.

Rudco was faced with suits aggregating $63,000 for personal injuries and death, arising out of its alleged negligent conduct. The injuries were admittedly serious and the element of damages gross and palpable. It was conscientiously convinced of its negligent liability. The limit of its protection under its policy was $10,000; its potential loss was therefore far greater than that of the Traders & General. Traders & General had investigated the claims; it is its business to appraise potential liability and losses. In the face of the facts shown upon the record, Traders & General had no standing to contend against the liability of Rudco, or the likelihood of a recovery far in excess of the limits of the policy. Rudco had the right to demand not a settlement on its terms and conditions, but a good faith co-operation on the part of Traders & General, wherein both parties would face the facts realistically and with a mutual respect for the interest of each.

■ Traders & General, as was its right and privilege, elected to contend however that Rudco was free from negligence and in nowise liable; that the policy did not cover the asserted losses, but it must assert such right in good faith and upon an honest belief. The coverage is plain, the negligence is patent, and it does not become Traders & General to deny liability in the circumstances. Traders & General had a right, as it did, to insist upon an agreement whereby it would defend with reservation of rights under the policy, and without prejudice to its asserted position of non-liability. It had, also, the right to adjudicate its liability under the policy, and to legally ascertain whether or not it owed any duty to the assured in virtue thereof. Indeed, such suits are to be encouraged as within the purpose and intendment of the Declaratory Judgment Act, 28 U.S.C.A. § 400, but it is not the purpose of the Act to accord an unfair advantage. This the trial court found in effect was the purpose of the filing of the declaratory judgment suit, and in the circumstances we are unable to say that the trial court was incorrect in its deductions and conclusions. Each of the parties to the contract owed to the other an express and implied duty to respect its rights and interests, and to approach the common problem realistically with open hands and without concealed weapons. The facts fully support the realistic view of the controversy taken by Rudco; they deny the arbitrary position taken by Traders & General.

At the time of the settlement by Rudco, the matters had reached a critical point. It had obtained an offer of compromise and settlement, admittedly just and reasonable if it was liable. In addition it had obtained an offer of contribution from the Carter Oil Company dividing the liability between them. The proposed settlements were negotiated by Rudco with the full knowledge of Traders & General, but without its assistance or acquiescence. The proposed compromise would not await the determination of who would pay it. If Rudco waited until the coverage under the policy was determined by the suit for declaratory judgment there was a possibility that the suit for declaratory judgment would develop not only the noncoverage under the policy, but the sole liability of Rudco for the injuries as well. If the proposed settlement was just, reasonable, and mutually advantageous, Traders & General had only to hazard the risk of coverage. The right to assert noncoverage was as much available to it after the settlement as before. By its own admissions, it is not prejudiced by the settlement of the suits, if Rudco is liable therefor. The determination of this question is conclusively shown by the record.

We recognize the evils inherent in any rule which permits, or justifies, a compromise or settlement by the assured without the consent of the insurer, yet we are unwilling to say that in no circumstances is such conduct justified.

■ Under the peculiar facts, shown here to exist, we hold that the course of conduct pursued by the Traders & General does not square with the standard of good faith and fair dealing which underlies the contract between the parties, and it is therefore without standing to assert its only defense.

The judgment is affirmed.